# EXHIBIT 15



IN THE GRAND COURT OF THE CAYMAN ISLANDS

FINANCIAL SERVICES DIVISION

FSD No. 163 of 2023 (DDJ)

IN THE MATTER OF THE COMPANIES ACT (2023 REVISION)

AND IN THE MATTER OF SILICON VALLEY BANK (CAYMAN ISLANDS BRANCH)

| | |
|---|---|
| **Appearances:** | Paul Kennedy of Campbells LLP for Sasuga Ventures Limited, Treasure Stream Holdings Limited and SVB Claims Limited (the Petitioners) |
| **Before:** | His Hon. Justice David Doyle |
| **Heard:** | 29 June 2023 |
| **Ex tempore Judgment delivered:** | 29 June 2023 |
| **Draft transcript of Ex tempore Judgment Circulated:** | 14 July 2023 |
| **Draft approved:** | 21 July 2023 |

## HEADNOTE

*Determination of issues relating to advertisement of a winding up petition; application for a sealing order for names of petitioners to be kept secret dismissed; importance of open justice; leave to amend petition granted; winding up petition granted and order made winding up a foreign company registered under Part IX of the Companies Act*

## JUDGMENT

### Introduction

1.  In this judgment I deal with two preliminary issues which arose this morning: one in relation to advertisement and the second one in relation to a sealing application. I also deal with an application for leave to amend the winding up petition and then the winding up petition itself.

2.  The court is grateful to Mr Paul Kennedy who appears on behalf of the Petitioners for his assistance by way of his written and oral submissions. He was subjected to a barrage of questioning from the bench this morning and I am grateful for the polite and patient way in which he dealt with those questions.

### Background

3.  On 10 March 2023 Silicon Valley Bank, Santa Clara, California, (the "Bank") was "closed" by the California Department of Financial Protection and Innovation which appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. It appears that the Bank was incorporated and organised under the laws of the State of California. It further appears that the Bank was registered as a foreign company in the Cayman Islands under Part IX of the Companies Act on 16 August 2007, and a document has been handed in to the court this morning which is entitled Cayman Islands Search Report, www.verify.gov.ky, dated 29 June 2023, today's date, entity name: Silicon Valley Bank; registration number 193670; registration date: 16 August 2007; entity type: foreign; status: active.

4.   On 13 March 2023, FDIC stated that all deposits and substantially all assets of the Bank had been transferred to Silicon Valley Bridge Bank NA, (the "Bridge Bank") and that depositors and borrowers will automatically become customers of the Bridge Bank. It was stated that "all depositors of the Institution would be made whole".

5.   On 31 March 2023, the Petitioners each received an email from FDIC attaching a notice which stated that balances held by customers in accounts at "the Cayman Islands Branch" are not deposits under the relevant legislation and regulations and "Your status as a result of the Institution's failure is that of general unsecured creditor."

6.   As at 13 June 2023, each of the Petitioners' bank statements with the Bank's Cayman Islands Branch (the "Branch") show that their respective balances are zero and that their funds have been transferred to the "SVB Receiver." The Petitioners did not authorise such transfers. The Petitioners (following the amendment of the petition in respect of the names of the Petitioners earlier today) claim that the Bank owes them the total sum of US$6,160,853.39 which represents the total amount deposited by the Petitioners with the Branch.

7.   On behalf of the Petitioners it is said that it appears that all of the assets of the Bank will be applied by the FDIC receiver to pay claims of creditors of the Bank including US depositors whose claims will apparently be paid in full in priority to the depositors of the Branch.

**Advertisement application**

8.   In relation to the advertisement issue, the Petitioners requested a direction from the court in respect of the advertisement of the petition pursuant to Order 3 rule 6 of the Companies Winding Up Rules (2023 Consolidation) (the "Winding-Up Rules").

9.   An advertisement should normally appear not less than seven business days after the service of the petition on the company and not less than seven business days before the hearing. The attorneys for the Petitioners were notified of the hearing date on 14 June 2023. The petition, summons and supporting evidence was served on what the Petitioners describe as the Cayman Branch on Wednesday, 14 June 2023 and the covering letter made it plain that "the matter has been listed before Justice Doyle at 10am on 29 June 2023."

10.    There has been advertisement in the South China Morning Post on 24 June 2023. Moreover, an article appeared on 23 June 2023 in the Wall Street Journal in its weekend edition (24-25 June 2023) and online, which provided details of the petition and the hearing date, with the headline "Customers burned in SVB Crash are fighting to get their money" and a caption "Foreign deposits weren't covered by US deposit insurance". An article also appeared in the Cayman Compass on 26 June 2023. It appears from the evidence that adequate notice was provided to creditors and the public by way of media coverage.

11.    I also understand that the matter appeared on the Grand Court's cause list, which has been online for some time, and I note the communications dated 27 June 2023 and 28 June 2023 from Dentons for the FDIC receiver. There is reference to the court hearing today but there is no request for an adjournment. Indeed it appears that the FDIC receiver is not minded to submit to the jurisdiction of this court.

12.    In passing, I also note the extract dated 27 June 2023 from a document entitled Cayman Islands Search Report: Silicon Valley Bank, date of registration: 16 August 2007; entity type: foreign; status: active. Mr Kennedy, who appears on behalf of the Petitioners, has confirmed that a further search this morning shows that those details remain the same.

13.    The Petitioners have brought to my attention *Caribbean Island Developments Limited* 2011 (1) CILR Note 4 and *HSH Cayman* 2010 (1) CILR 148.

14    In the circumstances of this case, having regard to the wide publicity that has already been given to it, I am content with the limited belated advertisement. I am satisfied that sufficient public notice has been given of today's hearing. I direct that the advertisement in this case is sufficient and no further advertisement is necessary. Counsel can file an updated draft order reflecting this determination later today, but that is my determination.

**The sealing application**

15.    The second preliminary issue, which arises by way of the sealing application, is much more problematic. In the Summons dated 13 June 2023 the Petitioners (simply described in the petition as "the Campbells SVB Depositor Group") sought a very wide sealing order as follows at paragraph 9:

"That all evidence, written submissions or other documents filed in connection with the Petition and/or this Summons be sealed and kept confidential pursuant to the Companies Winding Up Rules O.24, r.6."

16.     I accept that in written and oral submissions that request has been significantly narrowed.

17.     I have considered the evidence in support of the application for the sealing order. It is contained in paragraph 46 of the affidavit of Jane Maree Hale ("Ms Hale") sworn on 13 June 2023. Ms Hale says that she is a partner in the Hong Kong office of the law firm Campbells who acts for a number of creditors of the Branch who are owed collectively the amount of approximately US$38,000,000.00. She names them at paragraph 3(a) to (g). Paragraph 46 reads as follows:

"The Petitioners are also concerned to protect their privacy and to avoid any further harm to their economic interests which is likely to accrue if their information is made public and for that reason wish to have the Depositor Affirmations sealed on the court file and to have the portions of this Affidavit which identify them redacted. The Petitioners' identities would normally be confidential to the Branch and I am instructed that it would be harmful to their respective businesses if it were to be publically known that they have incurred significant losses due to the insolvency of the Branch since it damages confidence in them and that information could be used in an adverse way by other market participants. The Petitioners would consider acceding to requests from other depositors of the Branch to provide their details but they wish to avoid the situation where their identities are revealed to the financial press and/or the wider public and in their view no useful purpose would be served by such publicity. Accordingly they seek a sealing order pursuant to O.24, r.6 of the Companies Winding Up Rules as part of the relief sought in the Summons."

18.     The service letter dated 14 June 2023 that Campbells provided to the Branch also attached the pleadings and all the evidence in support. Campbells stated:

"You will note that the Petitioners are seeking an application for the sealing of the evidence in support of the Petition and Summons in order to maintain their privacy and the confidentiality of their affairs and we would be grateful if you would keep those documents confidential (other than sharing with your advisors) pending the determination of that application."

19.    I should add that the members of the initial group of Petitioners who have provided evidence do not make any reference to the sealing application and nor do they directly provide any evidence in support of it. It does not appear to have been at the forefront of their minds.

20.    Order 24 rule 3 (1) of the Winding Up Rules provides that every petition shall be heard in open court unless the Court directs, for some special reason, that it should be heard in chambers. I am dealing with this winding up petition at the moment in open court.

21.    Order 24 rule 6 of the Winding Up Rules provides:

    "6.    (1)    The Court may direct that the whole or part of any report, order, affidavit or other document, except the petition, winding up order or supervision order, which has been filed or is required to be filed pursuant to these Rules, shall be sealed and kept confidential for a specific period or until the happening of a specified event, on the grounds that –

            (a)    the information in question is of a confidential nature and will not come into the public domain unless and until the document containing such information is filed in Court; and

            (b)    the publication or immediate publication of the information contained in the document will harm the economic interests of the creditors or contributories of the company.

        (2)    The liquidator and any creditor or contributory may apply to the Court for a direction that a sealed document be unsealed on the grounds that –

            (a)    the information contained in it is no longer confidential;

            (b)    the reasons for sealing the document no longer exist or have expired; or

            (c)    publication of the information is not or is no longer harmful to the economic interests of creditors or contributories."

22.    It is important to note, as I endeavoured to cover in my exchanges with counsel, that Order 24 rule 6 (1) states that the court may direct that certain documents "except the petition, winding up order or supervision order" shall be sealed and kept confidential. CWR Form No 2 Winding Up Petition

24-10076-mg    Doc 2-15    Filed 01/18/24    Entered 01/18/24 21:35:54    Exhibit 15
Pg 8 of 20

**FSD2023-0163**                **Page 7 of 19**                         **2023-07-21**

states: "State name and address of petitioner". The petition and any winding up order would normally specify the identity of the petitioner. Order 24 rule 6 does not give this court jurisdiction in effect to keep the identity of a petitioner secret.

23. The Winding Up Rules must be read subject to the Constitution, primary legislation and fundamental principles of the common law. Article 7 of the Bill of Rights enacted by the Cayman Islands Constitution Order provides that:

> "(1)    Everyone has the right to a fair and <u>public</u> hearing in the determination of his or her legal rights and obligations by an independent and impartial court within a reasonable time...
>
> (9)    All proceedings instituted in any court for the determination of the existence or extent of any civil right or obligation, including the announcement of the decision of the court, shall be held in public.
>
> (10)    Nothing in subsection (1) or (9) shall prevent the court from excluding from the proceedings persons other than the parties to them and their legal representatives to such extent as the court –
>
> > (a)    may be empowered by law to do and may consider necessary or expedient in circumstances where publicity would prejudice the interests of justice, or in interlocutory proceedings, or in the interests of public morality, the welfare of minors or the protection of commercial confidence or of the private lives of persons concerned in the proceedings; or
> >
> > (b)    may be empowered or required by law to do in the interests of defence, public safety, or public order." (my underlining)

24. For a recent judgment referring to these provisions see Kawaley J's judgment in *Maples v Cayman Islands Monetary Authority* (FSD unreported judgment dated 31 March 2023) where the Authority had attempted to delay the publication of a judgment.

25. In a different context, Lord Reed in *A v British Broadcasting Corporation* [2014] UKSC 25, [2015] AC 588, emphasised the importance of the principle of open justice. In that case an applicant for judicial review sought permission to amend his application by deleting his name and address and

substituting letters of the alphabet. The point arose as to whether the court possessed any power at common law to protect the anonymity of a party to the proceedings before it. Lord Reed dealt with the general principle of open justice at paragraph 23 and stated:

> "It is a general principle of our constitutional law that justice is administered by the courts in public, and is therefore open to public scrutiny. The principle is an aspect of the rule of law in a democracy…"

26.    At paragraph 27 Lord Reed stated that if the principle of open justice is a constitutional principle to be found in the common law it follows that it is for the courts to determine its ambit and its requirements, subject to any statutory provision. The courts have an inherent jurisdiction to determine how the principle should be applied and there are exceptions to the principle. For example in litigation concerning a secret process "where the effect of publicity would be to destroy the subject matter". There needs however to be a compelling justification for any departure from the principle of open justice. It must be shown as a matter of strict necessity rather than convenience. Sometimes an order is made to preserve the anonymity of a witness in the interests of national security. The courts have the power to permit the identity of a party or a witness to be withheld from public disclosure where that is necessary in the interests of justice (see paragraph 38 of Lord Reed's judgment). In some cases anonymity may be necessary in view of the risks to the safety of a party or a witness. In other cases the health of a vulnerable person may be at risk.

27.    Lord Reed at paragraph 41 accepted that the example of a party who "may suffer commercial ruin if his identity becomes known" is capable of raising issues which could warrant a qualification of the principle of open justice. The evidence in the case presently before me goes nowhere near establishing a case of commercial ruin.

28.    At paragraph 79 Lord Reed referred to the fact that applicant A resided in a country where he was at risk of serious violence if his identity became known in connection with the proceedings. Lord Reed felt it appropriate both in the interests of justice and in order to protect A's safety that his identity should continue to be withheld.

29.    The fundamental principle of open justice is not a unique English concept. It features in other leading common law jurisdictions. In Australia for example in *X v Australian Prudential Regulation Authority* [2007] HCA 4, Kirby J stated:

"90.    … The proliferation of instances where courts suppress the identity of parties and witnesses (without specific legislative warrant) is undesirable.  The naming of X, Y and Z did not prejudice the security of the Commonwealth.  Nor is it apparent to me why it was necessary to suppress their names 'to prevent prejudice to the administration of justice".  It may cause some prejudice to the parties, perhaps, but ordinarily the administration of justice is strengthened by openness and full disclosure…

92.    No one before this Court wanted to engage in this debate.  However, it is up to the courts themselves to defend the general principle of openness and transparency of proceedings.    Judicial suppression creates suspicion and sometimes concern.  It should ordinarily be kept to a strict minimum.    The appellants had arguable legal points by which to defend their rights.  They should normally be expected to bear the burden of any publicity that attaches to that endeavour."

30.    In *Asia Television Ltd v Communications Authority* [2013] 3 HKC 62. [2013] 2 HKLRD 354 Chief Judge Cheung (as he then was) sitting in the Hong Kong Court of Appeal at paragraph 19 reminded the court of the basic principle that justice should not only be done but should manifestly and undoubtedly be seen to be done.  The Chief Judge emphasised that:

"…Open administration of justice is a fundamental principle of common law … It is of great importance, from the perspective of administration of justice, for a number of reasons. The public nature of proceedings deters inappropriate behaviour on the part of the court. It also maintains the public's confidence in the administration of justice.  It can result in evidence becoming available which would not become available if the proceedings were conducted behind closed doors or with one or more of the parties' or witnesses' identity concealed.  It makes uninformed and inaccurate comment about the proceedings less likely …"

31.    The learned Chief Judge at paragraph 23 referred to case law firmly establishing that the following considerations or matters do not by themselves justify any restriction on the open administration of justice:

(1)    publicity of litigation leading to embarrassment and inconvenience;

(2)    publicity leading to economic damage, even very serious economic damage;

(3)    professional embarrassment and possible damage to professional reputation;

(4)    the parties' agreement that the proceedings be held in private;

(5)    the mere fact that the subject proceedings which gave rise to a judicial review application were held in private.

32.    At paragraph 25 the Chief Judge (now the Chief Justice of Hong Kong) added:

"… unwanted publicity, embarrassment and so forth are some of the normal incidence of litigation. They are some of the inevitable consequences of open justice. As a general rule, no one involved in litigation, particularly the initiating party of litigation, can complain. In many but certainly not all cases, if parties desire secrecy, they may, where appropriate, go for arbitration, mediation or some other form of alternative dispute resolution."

33.    At paragraph 35 the Chief Justice reinforced his powerful points on open justice by stating:

"Moreover, it is not unreasonable to regard the person who initiates the proceedings as having accepted the normal incidence of the public nature of the proceedings …"

34.    Lam JA referred to the balancing exercise between various rights and at paragraph 59 added:

"In the balancing exercise, the court must proceed on the basis that Hong Kong is an open and free society. It is the professional duty of our media and journalists to report court proceedings in a responsible and unbiased manner. Transparency of information is the best safeguard against inaccurate quotations or distortions of what happens in court proceedings …"

35.    Lam JA at paragraph 64 added:

"… the inconvenience and embarrassment or even potential damages to professional reputation and financial losses arising from publicly relating to a public hearing can rarely be sufficient to outweigh the public interest in open justice …"

230629 In the matter of Silicon Valley Bank – Judgment – FSD 163 of 2023 (DDJ)

36.    I appreciate the court in that case was dealing with an application to sit in private. Each case of course must be considered on its own facts and circumstances and in its own context.

37    In respect of the legitimate interest in the public being aware of the names of parties to proceedings conducted in open court see the unanimous judgment of the Supreme Court of the United Kingdom delivered by Lord Rodger in *Re Guardian News and Media Ltd* [2010] UKSC 1, [2010] 2 AC 697 and his comment at paragraph 63:

> "What's in a name? "A lot", the press would answer."

38    See also the article "Justice Seen to be done or Seem to be done", James Spigelman, 10 March 2016 where it is stressed that the principle of open justice is of constitutional significance and the exceptions to it are "few and are strictly confined". Consider also, in the context of judicial review and confidentiality orders, the judgment of the Court of Appeal of Bermuda in *Director for Public Prosecutions v Cindy Clark* [2019] CA (Bda) 8 Civ, 21 June 2019 and reference to the public's right to know, even where personal interests would be served by privacy. In the context of judicial review of disciplinary proceedings, the Court of Appeal rejected an application by the Deputy Director of Public Prosecutions for anonymity and privacy. Kay JA (with whom Bell JA and Smellie JA agreed) stated:

> "5.  Open justice is a fundamental principal (sic) of the judicial processs ...
>
>  9.  ... Mr Pettingill ... submits that special considerations arise in a small jurisdiction such as Bermuda. For my part, I do not accept that the size of the country requires the public interest in open justice to be modified. The constitutional provision does not suggest that it does ...
>
> 11.  The Director and the Deputy are both senior wielders of state power, and where a dispute about its exercise is litigated between them, the public have a right to know. The Director accepts this, even though his personal interest would be served by privacy ..."

39.    In the Petitioners' original 20 page skeleton argument dated 21 June 2023, other than a brief one line mention of the application for sealing orders at paragraph 1, no arguments or authorities were advanced in support of the sealing application. The Court therefore asked the Petitioners, if they

wished to continue with their sealing application, to provide a skeleton argument and authorities in support of such.

40.     The Petitioners' 13 page supplemental skeleton argument dated 26 June 2023 presents arguments in respect of sealing at paragraphs 17 – 32 on pages 5 – 10 and I have full regard to those paragraphs. It also, perhaps recognising the inadequacies of the present evidence before the Court, requests at paragraph 28 "latitude to encroach into evidence on this point". As counsel should know, the place for evidence is affidavits or affirmations or live in Court. Skeleton arguments should be confined to arguments. The clue is in their name.

41.     The Petitioners place great reliance on former Chief Justice Smellie's judgment at first instance in *SPhinX Group of Companies (in official liquidation)* 2017 (1) CILR 176. That case did not involve an application to seal information which revealed the name of a petitioner to a winding up petition. At paragraph 17 Chief Justice Smellie referred to the Winding Up Rules and those who have access to information and documents on the Court file. Such may now have to be read in light of the United Kingdom Supreme Court's judgment in *Cape Intermediate Holdings Ltd v Dring* [2019] UKSC 38.

42.     In written submissions Mr Kennedy says that the case presently before the court is analogous to *ABC Company (SPC) v J & A Company Limited* 2012 (1) CILR 300 and at footnote 17 of his supplemental skeleton argument refers to footnote 16 of former Chief Justice Smellie's judgment in *SPhinX Group of Companies (in official liquidation)* 2017 (1) CILR 176 at page 185: "See for example *ABC Company (SPC) v J & A Company Ltd*, where the Court of Appeal anonymised its ruling and sealed the court file because of the risk of detriment to the business of the company if the winding up petition which had been struck out were to become public knowledge". The situation is quite desperate when counsel has to resort to delving into footnotes. Without a fully reasoned judgment of the Court of Appeal on the anonymisation point in *ABC Company (SPC)* that case is frankly of very little assistance on the sealing point. Moreover, it appears that steps were taken, in that case, to protect the identity of the company as the winding up petition had in fact been struck out. It was a very different case to the case presently before me.

43.  I have considered all that is written and said on behalf of the Petitioners in respect of the sealing application. Mr Kennedy, on behalf of the Petitioners, makes the following points in his skeleton argument:

    (1)  it is accepted that the principle of open justice is a fundamental constitutional principle and that derogations from open justice can only properly be made where, and to the extent that, they are necessary in order to secure the proper administration of justice;

    (2)  the names and addresses of the Petitioners, the fact that they held deposits with the Branch and the amount of those deposits is not publicly available information;

    (3)  publication of such information "could harm their economic interests";

    (4)  there is no particular benefit for the details of individual petitioners to be made public and no prejudice in not specifying them in the petition;

    (5)  the principle of open justice should give way in this case "albeit in a very limited and minor way so as to respect the Petitioners' right to privacy under Article 9";

    (6)  the two limbs of the test under Order 24 rule 6 (1) are satisfied in this case; and

    (7)  if the court is not minded to grant the sealing order, the Petitioners and the wider depositor group would need to consult and determine (i) whether any depositor would be willing to be substituted as Petitioner or (ii) whether to seek an adjournment.

44.  There is no evidence from the Petitioners themselves in support of the sealing application. I have carefully noted paragraph 46 of the first affidavit of Ms Hale. All that amounts to is that the Petitioners do not want their identities publicly known as that "would be harmful to their respective businesses". Such evidence does not persuade me that I should, either pursuant to Order 24 rule 6 or the court's inherent jurisdiction make an order, the effect of which would seal and keep secret from the public the identity of the Petitioners in this case. Such is not in the interests of justice. There is no necessity which would permit an exception to the fundamental principle of open justice. The court is dealing with a winding up petition. It deals with winding up petitions in open court. The identity of petitioners in winding up petitions should be publicly known. For these reasons I dismiss the application for the sealing order.

## Application for Leave to Amend Petition

45    In respect of this matter an application has been made for leave to amend the winding up petition to specify three entities as petitioners and to amend the amount of the debt. Reference is made to Winding Up Rules Order 3 rule 2 (3) and to *Re HSH Cayman* 2010 (1) CILR 148.

46.    The Court has been provided with a draft of the amended winding up petition and the Summons dated 29 June 2023. The application was for leave to amend the petition to delete reference to the Campbells SVB Depositor Group and to insert the names of three petitioners namely Sasuga Ventures Limited, Treasure Stream Holdings Limited and SVB Claims Limited (the "Petitioners") and the debt of US$37,960,842.52 be deleted and the sum of US$6,160,853.39 be inserted.

47.    Order 3 rule 2 (3) of the Winding Up Rules provides that a winding up petition that has been served may be amended but only with the leave of the court. In *HSH* Jones J held that the court has an inherent power to permit amendments to a winding up petition.

48.    I am content to permit amendments to the petition to regularise the identity of the petitioners and the amount of the debt. I grant leave to amend.

## Application for Winding Up Order

49.    A winding up petition was presented to the Grand Court on 13 June 2023. I have considered all the evidence in support. I have also considered the letters dated 27 and 28 June 2023 from Dentons who act for the FDIC, to Campbells who act for the Petitioners, and also a letter from Dentons, dated 27 June 2023 to the General Registry Department in the Cayman Islands. It is the intention of FDIC not to submit to the jurisdiction of the Grand Court.

50.    There was also an application for the appointment of joint provisional liquidators but that has been overtaken by the hearing of the winding up petition.

51.    Under section 91 (d) of the Companies Act the Court has jurisdiction to make a winding up order in respect of a foreign company which (i) has property located in the Islands; (ii) is carrying on business in the Islands; (iii) is the general partner of a limited partnership; (iv) is registered under Part IX. I am satisfied that the Bank is and remains registered under Part IX and I was properly referred to the Cayman Islands Search Report dated 29 June 2023 in that respect.

230629 In the matter of Silicon Valley Bank – Judgment – FSD 163 of 2023 (DDJ)

52.   Under section 92 (d) of the Companies Act a company may be wound up by the court if the
      company is unable to pay its debts and under (e) if the court is of the opinion that it is just and
      equitable that the company should be wound up.  Under section 94 (1) (b) of the Companies Act an
      application to the Court for the winding up of a company shall be by petition presented by "any
      creditor or creditors (including any contingent or prospective creditor or creditors)."

53.   Interestingly, section 242 (1) of the Companies Act provides that in determining whether to make
      an ancillary order under the application of a "foreign representative" the Court shall be guided by
      matters which will best ensure the economic and expeditious administration of the debtor's estate.
      Section 242 (2) provides that in the case of a debtor which is registered under Part IX, the Court
      shall not make an ancillary order under section 241 without also considering whether it should
      make a winding up order under Part V in respect of its local branch.  There is an interesting
      reference there to "local branch." Unless I have fundamentally misunderstood the position, and Mr
      Kennedy does not seek to correct me, a branch is not a separate legal entity.  The winding up order
      in this case would be in relation to the foreign company which is the relevant legal entity.

54.   I am satisfied that the Bank is a foreign company presently registered under Part IX of the
      Companies Act.

55.   Mr Kennedy helpfully refers me to a concise summary of the position under English law provided
      by Lawrence Collins J (as he then was) in *Re Drax Holdings Ltd* [2004] 1 WLR 1049.  Having
      reviewed authorities at paragraph 22 the learned Judge refers to the three core requirements before
      a foreign company can be wound up in England:

      (1) there must be a sufficient connection with England which may, but does not necessarily
          have to, consist of assets within the jurisdiction;
      (2) there must be a reasonable possibility, if a winding up order is made, of benefit to those
          applying for the winding up order; and
      (3) one or more persons interest in the distribution of assets of the company must be persons
          over whom the court can exercise jurisdiction.

56.   I am satisfied that the Bank has and has had sufficient connection with the Cayman Islands.  It had
      an active branch here and entered into contracts governed by Cayman law and it took Cayman

deposits. It is regulated by the Cayman Islands Monetary Authority. There is a clear and sufficient connection with the Cayman Islands. The Petitioners deposited approximately US$6 million in the branch in the Cayman Islands.

57.   There is also a reasonable possibility of a benefit to those applying for a winding up order if a winding up order is made. Mr Kennedy says that the liquidators can investigate the matter and can take action to establish the status of the Cayman depositors. If successful in that respect a clear benefit would accrue to the Petitioners.

58.   One of the Petitioners is a Cayman entity over which the court can exercise jurisdiction and Mr Kennedy says all three have submitted to the jurisdiction.

59.   The three core requirements have been duly satisfied.

60.   I am also conscious of issues of comity between the courts of the Cayman Islands and the courts of the United States of America. I factor all those matters into my mind when considering the exercise of my discretion in this case.

61.   I am satisfied on the evidence before me that the Bank is unable to pay its debts. Mr Kennedy refers to the evidence filed in these proceedings with at least US$6 million still outstanding. It has not been paid. Mr Kennedy also refers to an attachment to the letter of Dentons to the General Registry Department dated 27 June 2023, namely the findings of fact by Commissioner of Financial Protection and Innovation, 10 March 2023, San Francisco, California. The Commissioner finds:

"I.    FINDINGS OF FACT

1.    Silicon Valley Bank

Silicon Valley Bank (the "Bank") is, and was at all times mentioned in these Findings of Fact, a corporation organized under the laws of the State of California and authorized by the Commissioner to transact commercial banking business in the State of California.

2.    Liquidity and Insolvency

….. the bank is now insolvent.


II.    ULTIMATE FINDINGS

….the Commissioner finds:

1.    The Bank's liquidity position is inadequate, and it cannot reasonably be expected to pay its obligations as they come due.
2.    The Bank is insolvent.
3.    The Bank is conducting its business in an unsafe manner due to its present financial condition."

62.    There is overwhelming evidence of an inability to pay debts.

63.    I am satisfied that I should exercise my discretion in making a winding up order.  I should add not only am I satisfied on the inability to pay debts ground but I would also be satisfied on a just and equitable basis.  There appears to be a battle looming in respect of the treatment of the American and Cayman depositors.  An investigation needs to take place in respect of the apparent removal of any monies and assets from the Branch out of this jurisdiction.  The position of the Cayman depositors needs to be investigated further and where appropriate safeguarded.

64.    For all these reasons I am persuaded that it is appropriate to grant a winding up order and I make a winding up order substantially in the terms of the  draft helpfully filed in advance of this hearing, such draft to incorporate the amendments I specified during my exchanges with counsel.

65.    That is my judgment in connection with the application for the winding up order and the appointment of Joint Official Liquidators.

66.    The following order was made:

"**UPON** the Petition of (i) Sasuga Ventures Limited of 4th Floor, William Towers Warrens, St. Michael, Barbados (ii) Treasure Stream Holdings Limited of Vistra Corporate Services Centre,  Wickhams Cay 11, Road Town, Tortola, VG-1110, British Virgin Islands; and (iii)

230629 In the matter of Silicon Valley Bank – Judgment – FSD 163 of 2023 (DDJ)

Page 17 of 19

SVB Claims Limited of 4th Floor, Willow House, Cricket Square, George Town, Cayman Islands (together, the "**Petitioners**") dated 13 June 2023 in respect of Silicon Valley Bank, a foreign company registered under Part IX of the Companies Act (2023 Revision) with registration number 193670 (the "**Company**")

**AND UPON** reading the: (a) First Affidavit of Jane Hale dated 13 June 2023 including Exhibit JH-1; (b) Affirmations filed on behalf of each the Petitioners including each Exhibit to those Affirmations; (c) First Affirmation of Andrew Childe dated 6 June 2023; (d) First Affirmation of Michael Pearson dated 6 June 2023; (e) First Affirmation of Niall Ledwidge dated 8 June 2023; (f) Second Affidavit of Jane Maree Hale dated 21 June 2023 (g) the letters dated 27 June 2023 and 28 June 2023 from Dentons to Campbells LLP (h) the letter dated 27 June 2023 from Dentons to the General Registry of the Cayman Islands and its enclosures; (i) the First Affidavit of Matheo Vinciullo dated 27 June 2023 and (i) the various Affidavits of Service filed on behalf of the Petitioners

**AND UPON** hearing Paul Kennedy of Campbells LLP for the Petitioners

**AND UPON** the Company not appearing but the Court noting letters dated 27 and 28 June 2023 from Dentons to Campbells LLP and dated 27 June 2023 from Dentons to the General Registry Department and the Court noting that Dentons act for the Federal Deposit Insurance Corporation

**IT IS ORDERED THAT:**

1.  The Company be wound up by the Court under the provisions of the Companies Act (2023 Revision).

2.  Andrew Childe and Michael Pearson of 2nd Floor Harbour Centre, 42 North Church Street, George Town, Cayman Islands and Niall Ledwidge of 120 West 45th Street, Suite 2900, New York, NY 10036 be appointed as Joint Official Liquidators ("**JOLs**") of the Company but their powers shall be limited to acting in respect of the assets and affairs of the Cayman Islands branch of the Company and its creditors.

3.  The JOLs shall not be required to give security for their appointment.

4.  The JOLs have the power to act jointly and severally in their capacity as liquidators of the Company.

230629 In the matter of Silicon Valley Bank – Judgment – FSD 163 of 2023 (DDJ)

Page 18 of 19

5. The JOLs be at liberty to appoint such counsel, attorneys, professional advisors whether in the Cayman Islands or elsewhere, as they may consider necessary to advise and assist them in the performance of their duties in accordance with Order 25 of the Companies Winding Up Rules (2023 Consolidation).

6. No disposition of the property of the Company by or with the authority of the JOLs in carrying out their duties and functions and the exercise of their power under any Order granted pursuant to this petition shall be voided by virtue of Section 99 of the Companies Act.

7. Subject to Section 109(2) of the Companies Act and the Insolvency Practitioners Rules, the JOLs be authorised to render and pay invoices out of the assets of the Company for their own remuneration.

8. The JOLs be at liberty to meet all disbursements reasonably incurred in connection with the performance of their duties and, for the avoidance of doubt, all such payments shall be made as and when they fall due out of the assets of the Company as an expense of the liquidation.

9. The JOLs be at liberty to apply generally.

10. The Petitioners' costs of and incidental to the Petition shall be paid forthwith out of the assets of the Company as an expense of the liquidation."

_David Doyle_

_____

**HIS HON. JUSTICE DAVID DOYLE**

**JUDGE OF THE GRAND COURT**