**Return Date: January 31, 2024, at 10:00 a.m. Eastern Time**
**Objection Deadline: January 26, 2024**

**DENTONS US LLP**
Lynn P. Harrison, III, Esq.
Stephen S. Kudenholdt, Esq.
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: 212 768-6700
Facsimile: 212 768-6800
Email: lynn.harrisoniii@dentons.com
Email: stephen.kudenholdt@dentons.com

**DENTONS US LLP**
Sam J. Alberts, Esq.
(*pro hac vice* forthcoming)
1900 K Street, NW
Washington, DC 20006
Telephone: 202 496-7500
Facsimile: 202 496-7756
Email: sam.alberts@dentons.com

*Counsel to the Federal Deposit Insurance Corporation, in its corporate capacity and in its capacity as Receiver for Silicon Valley Bank, Santa Clara, and as Receiver for Silicon Valley Bridge Bank, N.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>SILICON VALLEY BANK (CAYMAN ISLANDS BRANCH),[1]<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No: 24-10076 (MG) |

**OBJECTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CORPORATE CAPACITY AND AS RECEIVER FOR SILICON VALLEY BANK, SANTA CLARA, AND AS RECEIVER FOR SILICON VALLEY BRIDGE BANK, N.A., TO THE APPLICATION FOR ORDER TO SHOW CAUSE WHY PROVISIONAL RELIEF PURSUANT TO 11 U.S.C. §§ 105(a), 1519 AND 1521 SHOULD NOT BE GRANTED**

---

[1] It is respectfully submitted that there is no legal entity called "Silicon Valley Bank (Cayman Islands Branch)." "Silicon Valley Bank" was registered under Part IX of the Cayman Islands Companies Act, with registration number 1963670. The Cayman Islands Branch is a branch of Silicon Valley Bank.

# TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................................................ iii

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................. 6

    I.     The Collapse of Silicon Valley Bank ................................................................ 6

    II.    The Cayman Branch ......................................................................................... 7

    III.   The Cayman Islands Proceeding ..................................................................... 11

    IV.   The JOLs Filed a Claim under FDIC-R2's Mandatory FIRREA Claims
           Process which Was Denied, and which May Be Asserted in Certain U.S.
           District Courts within 60 Days Thereof ......................................................... 14

ARGUMENT ................................................................................................................ 16

    I.     The Motion Should Be Dismissed For Lack Of Subject Matter Jurisdiction
           Under 12 U.S.C. § 1821(J) .............................................................................. 16

    II.    Inappropriate Forum Shopping and Venue in the Southern District of New
           York is Improper ............................................................................................. 18

    III.   The Motion Fails The Requirements Of Chapter 15 ................................... 19

         A.     An Overview of Chapter 15 ................................................................ 20

         B.     The Burden to Establish Provisional Relief Is on the JOLs ............................ 21

         C.     There Is No Likely Success on the Merits that the Petition Will Be
               Recognized ........................................................................................... 22

               1.     The Branch is Excluded from Being a Debtor Under § 109(b) ......... 22

               2.     The Branch Is Not a "Person" Eligible for Chapter 15 Relief
                     under § 109(a) .................................................................................... 23

                     a.     The Branch Does Not Qualify as a "Person" Because it
                            Is Not a Separate Legal Entity ................................................. 25

                     b.     An "Estate" or "Trust" Is not a "Person" under the
                            Bankruptcy Code ...................................................................... 26

               3.     The Foreign Proceeding Cannot Be Recognized as a "Foreign
                     Main Proceeding" Because the Branch's COMI Is in the
                     United States, Which Is Ascertainable by Third-Parties ................... 28

                     a.     SVB's COMI Is in California ................................................. 30

                       b.     The JOLs Cannot Demonstrate COMI in the Cayman
                            Islands, and the JOLs' Attempt to Do So Is Not in Good
                            Faith ........................................................................................ 33

               4.     There Is No Basis for Non-Main Recognition as that Relief Has
                     Not Been Adequately Addressed in the Motion ................................. 34

   5. The Foreign Proceeding Is Not a Collective Proceeding .................... 37

 D. The Branch Will Not Suffer Irreparable Harm Without the Requested Discovery Because the Discovery Is Not Warranted under 11 U.S.C. § 1521(a)(4) and Discovery Can Be Sought in the Receivership ................. 39

   1. The Requested Discovery Does Not "Effectuate the Purpose" of Chapter 15 ....................................................................................... 39

   2. The Requested Discovery Is Not Necessary to Protect the Branch's Assets .................................................................................. 40

 E. The Balance of Hardships Weighs in Favor of the FDIC Because the Relief Sought Does Not Sufficiently Protect the FDIC's Interests ................ 41

 F. Granting the Requested Discovery Would Not Be in the Public Interest ....... 42

 G. The FDIC'S *Touhy* Regulations Would Apply to Any Chapter 15 Discovery ...................................................................................................... 43

RESERVATION OF RIGHTS ................................................................................................ 45

CONCLUSION ....................................................................................................................... 45

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 299 Jack-Hemp Assocs.*,
  20 B.R. 412 (Bankr. S.D.N.Y. 1982) ....................................................................................27

*In re Agrokor d.d.*,
  591 B.R. 163 (Bankr. S.D.N.Y. 2018) ...................................................................................39

*In re Andrara Gutierrez Engenharia S.A.*,
  645 B.R. 175 (Bankr. S.D.N.Y. 2022) ...................................................................................21

*Antonio v. United States*,
  No. 14 Civ. 2072, 2017 WL 3769307 (S.D.N.Y. Aug. 30, 2017) .........................................44

*In re Ashapura Minechem Ltd.*,
  480 B.R. 129 (2012) ..........................................................................................................37, 38

*Asociación de Titulares de Condominio Castillo v. DiMarco*,
  581 B.R. 346 (B.A.P. 1st Cir. 2018) .....................................................................................25

*Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin.*,
  502 U.S. 32 (1991) ...............................................................................................................17

*In re Bear Stearns High-Grade Structured Master Fund, Ltd.*,
  389 B.R. 325 (S.D.N.Y. 2008) ...........................................................................27, 29, 32, 34

*In re Beechwood RE*,
  No. 19-11560, 2019 Bankr. LEXIS 2077 (Bankr. S.D.N.Y. Jul. 10, 2019) ..........................21

*In re Berau Cap. Res. Pte Ltd.*,
  540 B.R. 80 (Bankr. S.D.N.Y. 2015) ....................................................................................26

*Branch of Citibank, N.A. v. De Navares*,
  74 F.4th 8 (2d Cir. 2023) ...........................................................................................1, 22, 25

*In re British Am. Ins. Co. Ltd.*,
  425 B.R. 884 (Bankr. S.D. Fla. 2010) ...................................................................................35

*In re Calpine Corp.*,
  365 B.R. 401 (S.D.N.Y. 2007) ..............................................................................................21

*Cath. Sch. Emp. Pension Tr. v. Abreu (In re Cath. Sch. Emp. Pension Tr.)*,
　　599 B.R. 634 (B.A.P. 1st Cir. 2019) ...................................................................28

*Citizens Bank v. Strumpf*,
　　516 U.S. 16 (1995) ...............................................................................................4

*In re Commodore Int'l*,
　　242 B.R. 243 (Bankr. S.D.N.Y. 1999) ...............................................................40

*Courtney v. Halleran*,
　　485 F.3d 942 (7th Cir. 2007) ..............................................................................16

*In re Creative Fin. Ltd.*,
　　543 B.R. 498 (Bankr. S.D.N.Y. 2016) ...............................................34, 35, 36

*In re Daewoo Logistics Corp.*,
　　461 B.R. 175 (Bankr. S.D.N.Y. 2011) ...............................................................39

*Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*,
　　737 F.3d 238 (2d. Cir. 2013) ...................................................23, 24, 26, 27

*Edelmann v. Chase Manhattan Bank, N.A.*,
　　861 F.2d 1291 (2d. Cir. 1988) .................................................23, 25, 26

*In re Ennia Caribe Holding N.V.*,
　　596 B.R. 316 (Bankr. S.D.N.Y. 2019) ...............................................................41

*In re Estate of Whiteside by Whiteside*,
　　64 B.R. 99 (Bankr. E.D. Cal. 1986) ...................................................................27

*In re Fairfield Sentry Ltd.*,
　　440 B.R. 60 (Bankr. S.D.N.Y. 2010) .................................................................33

*First Nationwide Bank v. Florida Software Servs., Inc.*,
　　770 F. Supp. 1537 (M.D. Fla. 1991) ...............................................................5, 42

*Freeman v. FDIC*,
　　56 F.3d 1394 (D.C. Cir. 1995) ...........................................................................16

*In re Glitnir Banki  HF.*,
　　No. 08-14757 SMB, 2011 WL 3652764 (Bankr. S.D.N.Y. Aug. 19, 2011) ..........39

*In re Glob. Cord Blood Corp.*,
　　No. 22-11347 (DSJ), 2022 Bankr. LEXIS 3426 (Bankr. S.D.N.Y. Dec. 5,
　　2022) .....................................................................................................................37

*In re Gold & Honey, Ltd.*,
　　410 B.R. 357 (Bankr. E.D.N.Y. 2009) ...............................................................38

*In re Grabis*,
No. 13-10669, 2018 WL 6132045 (Bankr. S.D.N.Y Nov. 20, 2018) ...................................44

*Hilton v. Guyot*,
159 U.S. 113 (1895) ...................................................................................................................40

*In re Innua Can., Ltd.*,
No. 09-16362, 2009 Bankr. LEXIS 994 (Bankr. D.N.J. Mar. 25, 2009) ................................21

*In re Irish Bank Resolution Corp. Ltd.*,
538 B.R. 692 (D. Del. 2015) .....................................................................................................23

*Jaffe v. Samsung Elecs. Co.*,
737 F.3d 14 (3d. Cir. 2013) .......................................................................................................41

*Knight League Limited v. FDIC*,
Case No. 23-cv-03063-APM .................................................................................................4, 5

*Lamar, Archer, & Cofrin, LLP v. Appling*,
138 S. Ct. 1752 (2018) ..............................................................................................................28

*Lavie v. Ran (In re Ran)*,
607 F.3d 1017 (5th Cir. 2010) ...................................................................................................35

*In re Lyondell Chem. Co.*,
402 B.R. 571 (Bankr. S.D.N.Y. 2009) .......................................................................................21

*In re Millennium Glob. Emerging Credit Master Fund Ltd.*,
458 B.R. 63 (Bankr. S.D.N.Y. 2011) .........................................................................................35

*In re Modern Land (China) Co., Ltd.*,
641 B.R. 768 (Bankr. S.D.N.Y. 2022) ..........................................................................34, 35, 36

*Morning Mist Holdings Ltd. v. Kyrs (In re Fairfield Sentry Ltd.)*,
714 F.3d 127 (2d Cir. 2013) .........................................................................................29, 30, 33

*Morrisey v. Comm'r*,
296 U.S. 344 (1935) ..................................................................................................................28

*Nat'l Trust for Historic Preservation v. FDIC*,
995 F.2d 238 (D.C. Cir. 1993) ....................................................................................................1

*O'Melveny & Meyers v. FDIC*,
512 U.S. 79 (1994) ....................................................................................................................42

*In re OAS S.A., et al.*,
533 B.R. 83 (Bankr. S.D.N.Y. 2015) ............................................................................29, 30, 32

*In re Patriot Coal Corp.*,
   482 B.R. 718 (Bankr. S.D.N.Y. 2012) ..................................................................19

*In re PT Bakrie Telecom Tbk*,
   628 B.R. 859 (Bankr. S.D.N.Y. 2021) ..................................................................37

*Pub. Utils. Comm'n v. Cap. Transit Co.*,
   214 F.2d 242 (D.C. Cir. 1954) ........................................................................6, 43

*In re Quadruple D Trust*,
   639 B.R. 204 (Bankr. D. Colo. 2022) ..................................................................28

*In re Rede Energia S.A.*,
   515 B.R. 69 (Bankr. S.D.N.Y. 2014) ..................................................................41

*In re S.E.C.*
   *ex rel Glotzer*, 374 F.3d 184, 190 (2d Cir. 2004)................................................44

*In re SPhinX, Ltd.*,
   351 B.R. 103 (Bankr. S.D.N.Y. 2006) ........................................................... *passim*

*United States ex rel. Touhy v. Ragen*,
   340 U.S. 462 (1951)..................................................................................42, 43, 44

*Trinh v. Citibank, N.A.*,
   850 F.2d 1164 (6th Cir. 1988) ......................................................................22, 25

*United States v. DiCristina*,
   726 F.3d 92 (2d Cir. 2013)..................................................................................27

*Vishipco Line v. Chase Manhattan Bank, N.A.*,
   660 F.2d 854 (2d Cir.1981)..........................................................................23, 25

*Volges v. Resolution Trust Corp.*,
   32 F.3d 50 (2d Cir. 1994), *cert. denied*, 515 U.S. 1162 (1995)..............................16

*In re Walters*,
   113 B.R. 602 (Bankr. D. S.D. 1990) ....................................................................27

**Statutes**

11 U.S.C. § 101(9) ..............................................................................24, 25, 28

11 U.S.C. § 101(15) ..................................................................................26, 27

11 U.S.C. § 101(23) ..................................................................................37, 38

11 U.S.C. § 101(41) ..................................................................................24, 25

11 U.S.C. § 101-1532 ...............................................................................................1

11 U.S.C. § 103(a) ..................................................................................................23

11 U.S.C. § 105(a) ...................................................................................................1

11 U.S.C. § 109 ..........................................................................................20, 23, 26

11 U.S.C. § 109(a) ............................................................................................*passim*

11 U.S.C. § 109(b) ............................................................................................22, 23

11 U.S.C. § 1501(a) .................................................................................................39

11 U.S.C. § 1501(c)(1) ...........................................................................................22

11 U.S.C. § 1502 .....................................................................................................26

11 U.S.C. § 1502(1) ..........................................................................................26, 27

11 U.S.C. § 1502(2) ................................................................................................34

11 U.S.C. § 1502(4) ................................................................................................28

11 U.S.C. § 1502(5) ................................................................................................34

11 U.S.C. § 1515 .....................................................................................................20

11 U.S.C. § 1517 ..............................................................................................20, 37

11 U.S.C. § 1517(b) ................................................................................................20

11 U.S.C. § 1519 ......................................................................................................1

11 U.S.C. § 1519(a) ................................................................................................21

11 U.S.C. § 1519(e) .............................................................................................1, 21

11 U.S.C. § 1521 ...........................................................................................1, 36, 39

11 U.S.C. § 1521(a)(4) ..................................................................................39, 40, 41

11 U.S.C. § 1521(c) ................................................................................................36

11 U.S.C. § 1522(a) ........................................................................................39, 41

12 U.S.C. § 1813(a)(3) ............................................................................................10

12 U.S.C. § 1818(i)(1) .............................................................................................16

12 U.S.C. § 1821(c) ............................................................................................................2

12 U.S.C. § 1821(d) .......................................................................................................2, 15

12 U.S.C. § 1821(d)(2) ....................................................................................2, 9, 17, 18

12 U.S.C. § 1821(d)(3) ...................................................................................................14

12 U.S.C. § 1821(d)(5) .....................................................................................................2

12 U.S.C. § 1821(d)(5)(A) .............................................................................................15

12 U.S.C. § 1821(d)(5)(E) ..........................................................................................4, 18

12 U.S.C. § 1821(d)(6) ...................................................................................15, 24, 40

12 U.S.C. § 1821(d)(6)(A) ...................................................................................2, 17, 18

12 U.S.C. § 1821(d)(6)(A). ..............................................................................................4

12 U.S.C. § 1821(d)(11) ...................................................................................................2

12 U.S.C. § 1821(j) ................................................................................................ *passim*

12 U.S.C. § 1823(c)(4)(A) ...............................................................................................6

12 U.S.C. § 1823(G) .........................................................................................................6

28 U.S.C. § 1410 ......................................................................................................18, 19

Cayman Islands Companies Act § 91 ...............................................................11, 12, 13

Cayman Islands Companies Act § 183 ............................................................................7

Cayman Islands Companies Act § 184 ........................................................................7, 8

Cayman Islands Companies Act § 186 ............................................................................8

Cayman Islands Companies Act § 192 ..........................................................10, 11, 13

**Other Authorities**

12 C.F.R. Part 309...................................................................................................42, 44

12 C.F.R. § 309.6(b)(8)....................................................................................................43

12 C.F.R. § 330.3(e)(1).....................................................................................................10

1 Collier Int'l Bus. Insolvency Guide ¶ 8.01 (2023). ....................................................20

Cayman Islands Search Report, www.verify.gov.ky .......................................................................12

Congress in the Financial Institutions Reform, Recovery, and Enforcement Act of
   1989, Pub. L. No. 101-73, 103 Stat. 183, *reprinted in* 1989 U.S.C.C.A.N. 183 ......................2

Fed. Deposit. Ins. Corp., http://www.fdic.gov/about/ ...................................................................2

H.R. Rep. 109-31, pt. 1, 109th Cong. 1st Sess..............................................................................29

The Federal Deposit Insurance Corporation (the "FDIC"), in its corporate capacity ("FDIC-Corporate"), and in its capacity as Receiver for Silicon Valley Bank, Santa Clara ("FDIC-R1"), and as Receiver for Silicon Valley Bridge Bank, N.A., ("FDIC-R2", and collectively with FDIC-R1, the "FDIC-Rs," and with FDIC and FDIC-Corporate, the "Objectors"), by and through their counsel, Dentons US LLP, files this objection (the "Objection") to the *Application for Order to Show Cause Why Provisional Relief Pursuant to 11 U.S.C. §§ 105(a), 1519, And 1521 Should Not Be Granted* [Docket No. 3] (the "Motion") and the *Memorandum of Law in Support of Application for Order to Show Cause Why Provisional Relief Pursuant to 11 U.S.C. §§ 105(a), 1519, and 1521 Should Not Be Granted* [Docket No. 4] (the "Memorandum")[2] filed by Andrew Childe, Niall Ledwidge and Michael Pearson, in their capacities as the appointed joint official liquidators (collectively, the "JOLs" or "Movants") of the Cayman Islands branch (the "Branch") of Silicon Valley Bank ("SVB"), an entity that is being administered by FDIC-R1 in a formal receivership under United States law, states as follows:

## PRELIMINARY STATEMENT

To qualify for provisional relief, Chapter 15 of Title 11 of the United States Code (the "Bankruptcy Code")[3] requires the JOLs to establish the standard for an injunction. *See* 11 U.S.C. § 1519(e). For a multitude of reasons, including the Branch's ineligibility as a debtor under the Bankruptcy Code, the failure of the JOLs to demonstrate irreparable harm to the Branch's assets (the Branch has no assets), and the jurisdictional bar under 12 U.S.C. § 1821(j), the Court must deny the Motion.

---

[2] Capitalized terms not defined herein shall have the meanings ascribed in the Motion and Memorandum.

[3] Unless otherwise stated, all references to "section," "§," or "chapter" herein are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code").

The overarching statutory mission of the FDIC is to maintain stability and public confidence in the nation's financial system. FED. DEPOSIT. INS. CORP., http://www.fdic.gov/about/. When an insured depository institution (or bank) fails, the FDIC is ordinarily appointed receiver. 12 U.S.C. § 1821(c). The FDIC, as receiver, assumes responsibility for efficiently maximizing the recovery from the disposition of the failed bank's assets and the resolution of claims in the receivership. 12 U.S.C. § 1821(d). The proceeds of the failed bank's assets are distributed to the receivership's creditors, including depositors, according to priorities set by law. 12 U.S.C. § 1821(d)(11). To accomplish these goals, the FDIC as receiver takes charge of the failed bank's assets and manages an exclusive, mandatory claims process established by Congress in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183, *reprinted in* 1989 U.S.C.C.A.N. 183 ("FIRREA").

As applicable here, the FDIC, as receiver, succeeds to:

> (i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution; and

> (ii) title to the books, records, and assets of any previous conservator or other legal custodian of such institution.

12 U.S.C. § 1821(d)(2)(A). Likewise, the FDIC, as receiver, has the statutory power to take over the assets of the institution, collect all obligations due to the institution, preserve and conserve the assets and property of the institution, and administer all claims against the institution. 12 U.S.C. § 1821(d)(2)(B) and (5). It was to these powers and functions that FDIC-R1 succeeded upon its appointment as receiver for SVB.

Additionally:

> Except as provided in [section 1821], no court may take any action, except at the request of the Board of Directors by regulation or order,

- 2 -

> to restrain or affect the exercise of powers or functions of the
> Corporation as a conservator or a receiver.

12 U.S.C. § 1821(j).

Movants' petition (the "Petition") for relief under Chapter 15 indisputably constitutes an impermissible attempt to restrain and affect the exercise of the FDIC-Rs' powers and functions to administer and liquidate the SVB receiverships. As more fully explained below, the Branch was not a separate corporate entity. *See Declaration of Luis Mayorga* (the "Mayorga Decl.") at ¶¶ 6-7. Instead, it was merely a part of SVB, operated by SVB employees in Santa Clara, California. Mayorga Decl. at ¶ 6. As such, the Branch had no separate assets or liabilities. Any assets and liabilities associated with the Branch were assets and liabilities of SVB, to which FDIC-R1 succeeded upon its appointment as receiver. These indisputable facts both disqualify the Branch from being a debtor under any chapter of the Bankruptcy Code and confirm that the Petition and Motion seek to have the Court impermissibly exercise control over FDIC-R1 and a part of its receivership. This, section 1821(j) of FIRREA forbids.

Additionally, the JOLs' claimed need for immediate discovery through a Chapter 15 proceeding is meritless. First, the SVB Eurodollar Sweep Account Agreement, the SVB Eurodollar Money Market Account Agreement, and the SVB Eurodollar Operating Account Agreement (attached to the Mayorga Decl. as Exs. C-E, respectively and referred to collectively as the "Eurodollar Agreements") between SVB and the Clients[4] at the Branch plainly state the nature of their claims in the event of a bank failure: ". . . your status in the event of a Bank failure would be that of a general creditor and not a depositor." The JOLs' status in relation to any claims that they assert in the SVB receivership is, unequivocally, as general creditors. To be clear, the Branch,

---

[4] The Eurodollar Agreements refer to SVB's counterparties as the "Client."

whose interests the JOLs purport to represent (they do not), does not and cannot have a claim against a receivership of which it is a part. The JOLs represent only their personal interests, nothing more. There also can be no dispute that funds deposited in a bank give rise to corresponding liability and the funds become property of the bank. *See Citizens Bank v. Strumpf,* 516 U.S. 16, 21 (1995). Thus, the JOLs and other clients of the Branch have no property interest in the funds administered by FDIC-R1. Second, the JOLs have already commenced a legal proceeding in the United States by submitting a claim to FDIC-R2. Due to the December 26, 2023, disallowance of the JOLs' administrative claim, the JOLs have until February 24, 2024, to file a complaint in either the Northern District of California or the District of Columbia. 12 U.S.C. § 1821(d)(6)(A). If they take such action, they may seek to take discovery under the Federal Rules of Civil Procedure. Indeed, a separate action commenced on behalf of sixty-seven (67) Clients of the Branch is already pending in the United States District Court for the District of Columbia.[5] Third, the Branch is barred from seeking discovery regarding FDIC-R2's review and determination of the Branch's administrative claim. 12 U.S.C. § 1821(d)(5)(E) ("No court may review the Corporation's determination pursuant to subparagraph (D) to disallow a claim.").

Even if the JOLs could seek valid relief under the guise of a Chapter 15 petition (which they cannot), the venue is improper because the Branch has no assets or business activity in New York. As support for venue in the Southern District of New York, the JOLs allege, "the Debtor holds property and its U.S.-based principal place of business [is] within this District." Memorandum at ¶ 16. This assertion is meritless. While the JOLs might have chosen or attempted to set up shop in New York as the focus of their activities, the Branch has never operated in New

---

[5] *Knight League Ltd. v. FDIC,* Case No. 23-cv-03063-APM, U.S. Dist. Ct., Dist. of Colum. *See* Mayorga Decl. at Ex. H.

York and has no principal place of business in this District. Additionally, the Branch does not have assets—those assets are held by FDIC-R1.

Again, the JOLs must meet the standard for an injunction to qualify for provisional relief. In sum, the JOLs fail to meet their burden to demonstrate a likelihood of success on the merits. They cannot meet this burden because (a) they cannot show a risk of irreparable harm to the Branch's assets, in part because the Branch has no assets, (b) the Branch is merely a part of SVB, not a separate legal entity, and is thus not an eligible debtor under any Chapter of the Bankruptcy Code, and (c) the Petition, including the provisional relief requested by the JOLs, would have the Court exercise control over certain assets and liabilities of the FDIC-R1 receivership and affect the exercise of its powers and functions, which Title 12 prohibits. Additionally, U.S. banks (including bank branches) cannot be debtors under any chapter of the Bankruptcy Code, including Chapter 15. The fact that the Branch is no longer operating is immaterial. Otherwise, SVB itself would be eligible for bankruptcy relief. It is not. The JOLs have also failed to demonstrate that the Branch's center of main interest (the "COMI") is in the Cayman Islands or that the Cayman Islands Proceeding (defined below) can be classified as a "foreign non-main proceeding."

Finally, the JOLs do not meet their burden to show that the public interest favors the relief they seek. To the contrary, notwithstanding the Cayman Islands Proceeding, the JOLs do not represent the interests of the Branch, which was part of SVB and is now administered as part of the FDIC-R1 receivership. The interests of those represented by the JOLs, like all Clients of the Branch, merely represent their own, private interests. And, indeed, they and other Clients of the Branch are already pursuing those interests by submitting claims to the FDIC and, as the *Knight League* complaint confirms, pursuing litigation. Those private interests, however, do not outweigh the public interest in enforcing FIRREA. *See First Nationwide Bank v. Florida Software Servs.,*

*Inc.*, 770 F. Supp. 1537, 1541 (M.D. Fla. 1991) ("There is almost no legitimate private expectation which outweighs the public interest in enforcing FIRREA"); *Pub. Utils. Comm'n v. Cap. Transit Co.*, 214 F.2d 242, 246 (D.C. Cir. 1954) ("[C]ourts should be reluctant to take action which would deprive [an agency] of opportunity to perform its function under governing statutes.").

For all of these reasons and those set forth below, the Court should deny the Motion.

## **BACKGROUND**

### I.    **The Collapse of Silicon Valley Bank**

On Friday, March 10, 2023, the depositors ran on SVB, then the nation's 16th-largest bank. SVB did not have cash on hand to cover depositors' withdrawals and ultimately failed. It was, at the time, the second-largest bank failure in U.S. history. As a result, on March 10, 2023, the California Department of Financial Protection and Innovation closed SVB and appointed FDIC-R1 (the "SVB Receivership").

Two days later, on March 12, 2023, the Secretary of the Treasury authorized application of the "Systemic Risk Exception" to the least-cost resolution provision of the Federal Deposit Insurance Act (the "FDI Act"). The Systemic Risk Exception exempts the FDIC from the statutory requirement to resolve a failed, insured depository institution in a manner that "is the least costly to the Deposit Insurance Fund" of the FDI Act and provides the FDIC with the discretion to take any action it deems necessary to avoid or mitigate "serious adverse effects on economic conditions or financial stability." 12 U.S.C. § 1823(c)(4)(A) and (G). The application of the Systemic Risk Exception to SVB's receivership was novel. The Systemic Risk Exception had rarely been invoked and had never been applied to a bank failure in which the FDIC was appointed receiver.

On Monday, March 13, 2023, FDIC-R1 announced the creation of Silicon Valley Bridge Bank, N.A. (the "Bridge Bank"), a temporary national bank chartered by the Office of the Comptroller of the Currency. Shortly after the Bridge Bank's creation, FDIC-R1 transferred nearly

all of SVB's assets and liabilities to the Bridge Bank under a "Transfer Agreement" between the parties dated March 13, 2023, to enable the Bridge Bank to pay deposit claims and service assets during the time it took the FDIC to market the SVB franchise to potential purchasers. Importantly, the Bridge Bank did not assume the liabilities owed to Clients of the Branch, which were and remain general unsecured liabilities of FDIC-R1, subject to applicable limits under Title 12 and the claimants' compliance with the FIRREA claim process.

## II.     The Cayman Branch

SVB operated the Branch in the Cayman Islands from its California headquarters. Mayorga Decl. at ¶ 6. The Branch existed for the principal purpose of accepting funds under the Eurodollar Agreements on behalf of SVB. Mayorga Decl. at ¶ 7. The Branch was never a separate legal entity of any kind. Rather, SVB—not the Branch—was registered as an overseas company pursuant to Part IX of the Cayman Islands' Companies Act (the "Companies Act"). *See* Mayorga Decl. at Ex. A. Section 183 of Part IX defines a "foreign company" as,

> 183. In this Part, a foreign company means an *overseas company* which, after the 1st December, 1961, establishes a place of business or commences carrying on business… within the Islands, and all overseas companies which before the 1st December, 1961 established a place of business or carried on business as aforesaid within the Islands at the 1st December, 1961."

Companies Act § 183 (Cayman Is.) (emphasis added); *see Declaration of Michael Pearson* [Docket No. 2] (the "Pearson Decl.") at Ex. 1 at 54.

Section 184 of the Companies Act establishes the steps a foreign company must take to register:

> (1) Every foreign company shall, within one month after becoming a foreign company as defined in section 183, deliver to the Registrar for registration the following —

(a) a certified copy of the *foreign company's certificate of formation or incorporation*, or the equivalent document issued by the relevant authority as evidence of its formation or incorporation;

(b) a certificate of good standing issued by the relevant authority (or a certified copy thereof), or, if the relevant authority does not issue such certificates of good standing, a declaration signed by a director *of the foreign company that the foreign company is in good standing* with the relevant authority, in either case, dated no earlier than one month prior to the date of its delivery to the Registrar;

(c) a certified copy of any charter, by-laws or memorandum or articles of association or other constitutional document (howsoever called) *of the foreign company* that is required to be filed with the relevant authority under the laws of the relevant jurisdiction *in connection with the incorporation or formation of the foreign company*;

(d) a list of its directors, containing such particulars with respect to the directors as are by this Act required to be contained with respect to directors in the register of the directors of a company; and

(e) the names and addresses of some one or more than one person resident in the Islands authorized to accept on its behalf service of process and any notices required to be served on it and shall pay to the Registrar the fee specified in Part 5 of Schedule 5.

Companies Act § 184 (Cayman Is.) (emphases added); Pearson Decl. at Ex. 1 at 54.

Section 186 of the Companies Act prescribes the evidence that establishes the registration in the following terms:

(1) Upon compliance with section 184, the Registrar shall issue a certificate under that person's hand and seal of office *that the foreign company is registered under this Law*.

(2) A certificate of registration *of a foreign company* issued under subsection (1) shall be conclusive evidence that compliance has been made with all requirements of this Act in respect of registration.

Companies Act § 186 (Cayman Is.) (emphases added); Pearson Decl. at Ex. 1 at 56.

- 8 -

SVB, was a "foreign company" pursuant to the Companies Act, registered in the Cayman Islands. Mayorga Decl. at Ex. A. To reiterate, the Branch was merely a part of SVB. The certificate of registration is in SVB's name, and the Branch was not separately incorporated. Mayorga Decl. at ¶ 5. Further, the Branch had neither a physical office nor any Cayman Islands-based employees. Mayorga Decl. at ¶ 5. It had no separate assets or liabilities; its assets and liabilities were assets and liabilities of SVB, which then became assets and liabilities of FDIC-R1 upon its appointment as receiver. *See* 12 U.S.C. § 1821(d)(2).

SVB, through the Branch, offered three types of accounts governed by the Eurodollar Agreements to Clients—(i) the Eurodollar Sweep Account; (ii) the Eurodollar Operating Account; and (iii) the Eurodollar Money Market Account—governed by three similarly named agreements, the SVB Eurodollar Sweep Account Agreement, the SVB Eurodollar Money Market Account Agreement, and the SVB Eurodollar Operating Account Agreement. Mayorga Decl. at Exs. C-E. Each of the Eurodollar Agreements provided that obligations under the agreements were payable and collectible only at and by the Cayman Branch. Mayorga Decl. at Exs. C-E. They also confirmed, in unambiguous language, that the accounts were not covered by FDIC insurance, stating explicitly that the funds in the accounts "are not 'deposits' as defined by the FDIC, and your status in the event of a Bank failure would be that of a general creditor and not a depositor." Mayorga Decl. at Exs. C-E. As further confirmation of the status of the accounts, the agreements also stated: "**These deposits are not domestic deposits, are NOT insured by the FDIC and are NOT guaranteed in any way by the United States government or any government agency thereof.**" Mayorga Decl. at Exs. C-E (emphasis in the original).[6] Although the Eurodollar

---

[6] There is, however, a fundamental difference readily apparent from the face of the Eurodollar Agreements. Unlike the other Eurodollar Agreements, operation of the SVB Eurodollar Sweep Account Agreement

Agreements specifically reference that they are to be construed in accordance with California law, Mayorga Decl. at Exs. C-E, federal law governs the treatment of deposits payable outside the United States. *See* 12 C.F.R. § 330.3(e)(1) ("Any obligation of an insured depository institution which is payable solely at an office of that institution located outside any State, as the term 'State' is defined in section 3(a)(3) of the Act (12 U.S.C. § 1813(a)(3)), is not a deposit for purposes of this part.").

Upon the appointment of FDIC-R1, the Branch ceased operations. Mayorga Decl. at ¶ 9. It had and has no assets or liabilities separate from SVB. Mayorga Decl. at ¶ 6. Any assets and liabilities associated with the Branch became part of the SVB Receivership administered by FDIC-R1.

Notwithstanding the JOLs' suggestion to the contrary, the Branch was never registered in the Cayman Islands. Mayorga Decl. at ¶ 5. Rather, SVB was registered as a foreign company. Mayorga Decl. at ¶ 5, Ex. A. The process by which an overseas company ceases to be a "foreign company" is set out in section 192 of the Companies Act:

> Removing company's name from register.

> 192. If any foreign company ceases to carry on or have a place of business in the Islands it shall forthwith give notice of the fact to the Registrar and, as *from the date on which notice is so given, the obligation of the foreign company to deliver any document to the Registrar shall cease*:

> Provided that where the Registrar is satisfied by any other means that the foreign company has ceased to carry on or have a place of business in the Islands it shall be lawful for the Registrar to close the file of the foreign company and thereupon the obligation of the foreign company to deliver any document to the Registrar shall cease.

---

required Clients to have an associated domestic (U.S.) account at SVB to and from which SVB would transfer funds in accordance with the agreement. Mayorga Decl. at ¶ 8, Ex. C.

Companies Act § 192 (Cayman Is.) (emphasis added); Pearson Decl. at Ex. 1 at 58.

Other than providing notice to the Registrar, there are no other requirements or steps to be taken to affect the de-registration of a "foreign company." Pearson Decl. at Ex. 1 at 58. There is no provision whereby the Registrar has discretion or jurisdiction to refuse de-registration pursuant to a notice prescribed in the above section. Pearson Decl. at Ex. 1 at 58. Thus, in accordance with the above, FDIC-R1 wrote to the Registrar on June 27, 2023 (through its Cayman Islands attorneys), informing the Registrar (among other things) that:

> Pursuant to section 192 of the Companies Act, the Receiver gives notice that SVB has ceased to carry on or have a place of business in the Cayman Islands from March 10, 2023. Please remove SVB from the Companies Register forthwith to reflect its deregistration."

Mayorga Decl. at Ex. F. Thus, from June 27, 2023, at the latest, SVB was deregistered as a "foreign company" under section 192 of the Companies Act due to the above notice.

## III.    The Cayman Islands Proceeding

It is against this factual background that certain creditors of SVB—former Clients at the Branch (the "Cayman Creditors")—brought a petition in the Cayman Islands before the Grand Court of the Cayman Islands (the "Cayman Court") seeking to wind up SVB on June 13, 2023, that was heard on June 29, 2023 (the "Cayman Islands Proceeding"). Pearson Decl. at Ex. 13.

FDIC-R1 did not submit to the jurisdiction of the Cayman Court. Jurisdiction to wind up a company in the Cayman Islands is set out at section 91 of the Companies Act in the following terms:

> 91. The Court has jurisdiction to make winding up orders in respect of —
>
> (a) an existing company;
>
> (b) a company incorporated and registered under this Law;
>
> (c) a body incorporated under any other law; and

> (d) a foreign company which —
>
>> (i) has property located in the Islands;
>>
>> (ii) is carrying on business in the Islands;
>>
>> (iii) is the general partner of a limited partnership; or
>>
>> (iv) is registered under Part IX.

Companies Act § 91 (Cayman Is.); *see* Pearson Decl. at Ex. 1 at 18-19.

The above does not refer to the historical status of the company but to the status of the company at the time of the application when the Cayman Court seeks to take jurisdiction (*e.g.*, a company which "has" property or "is" carrying on business or "is" registered under Part IX). As such, the Cayman Court did not have jurisdiction over the wind-up of SVB. There is no allegation that SVB could have fallen within subsections 91(a), (b) or (c) as those apply to Cayman Islands' companies. There is no allegation that SVB fell within subsections 91(d)(i), (ii) or (iii). The only allegation (and the only basis upon which the Cayman Court took jurisdiction over SVB) was pursuant to section 91(d)(iv) as an allegedly registered foreign company. *See* Pearson Decl. at Ex. 15.

Notwithstanding section 91, the Cayman Court issued a Winding-Up Order reciting that, "*Silicon Valley Bank*, a foreign company registered under Part IX of the Companies Act (2023 Revision) with registration number 193670" was being wound up pursuant to this order (the "Winding-Up Order"). Pearson Decl. at Ex. 14 (emphasis added).

Subsequently, on July 21, 2023, the Cayman Court entered a judgment (the "Judgment"), which states (in the "Background" section) that this conclusion was based on the following:

> It further appears that the Bank was registered as a foreign company in the Cayman Islands under Part IX of the Companies Act on 16 August 2007, and a document has been handed up in to the court this morning which is entitled Cayman Islands Search Report, www.verify.gov.ky date 29 June 2023, today's date, entity name:

> *Silicon Valley Bank*; registration number 193670; registration date:
> 16 August 2007; entity type: foreign; status: active.

Pearson Decl. at Ex. 15, ¶ 3 (emphasis added). Although, the Judgment refers to the letters on

behalf of the FDIC at paragraph 49, the Judgment contains no analysis of why a "Search Report"

is dispositive of a foreign company's status as registered, notwithstanding the unequivocal

provisions of section 192 of the Companies Act prescribing the steps for deregistration, which

were followed by FDIC-R1 on behalf of SVB. Pearson Decl. at Ex. 15. There is no provision of

the Companies Act providing that a search report issued from the referenced website demonstrates

that a "foreign company" remains registered in accordance with Section 192 of the Companies

Act. Pearson Decl. at Ex. 1. This was the sole basis upon which the Cayman Court took jurisdiction

over SVB in ostensible compliance with the provisions of Section 91 of the Companies Act that

provide exclusive criteria for jurisdiction to make winding up orders.

The evidence filed in support of the Cayman Islands Proceeding included the June 13,

2023, affidavit of Jane Maree Hale, which set out the purported purpose of the Cayman Islands

Proceeding as follows:

> 45. The Petitioners wish to have JPLs appointed on an urgent basis
> to act in their best interest and ensure that no further steps are taken
> with respect to the affairs of the Branch without proper investigation
> and oversight by this Court.

Mayorga Decl. at Ex. G. Similarly, at paragraph 47, Ms. Hale states the purpose in the following

terms:

> 47. . . . The Petitioners also believe that it is appropriate and in the
> interests of not just the Petitioners but all of the depositors of the
> Branch to have an independent liquidator and officer of the Court
> appointed who will investigate whether the assets of the Branch
> have been and are being dealt with properly and in accordance with
> Cayman Islands law and to take appropriate steps to effect an orderly
> wind down of the affairs of the Branch.

Mayorga Decl. at Ex. G. In its Judgment, considering the potential benefit to the Cayman Creditors,

the Cayman Court concluded that, "Mr. Kennedy says that the liquidators can investigate the

matter and can take action to establish the status of the Cayman depositors." Pearson Decl. at

Ex. 15, ¶ 57. The Judgment further concludes:

> There appears to be a battle looming in respect of the treatment of
> the American and Cayman depositors. An investigation needs to
> take place in respect of the apparent removal of any monies and
> assets from the Branch out of this jurisdiction. The position of the
> Cayman depositors needs to be investigated further and where
> appropriate safeguarded.

Pearson Decl. at Ex. 15, ¶ 63. In terms of the scope of what the Cayman Court ordered, paragraph

2 of the Winding-Up Order stipulates that the powers of the JOLs, ". . . shall be limited to acting

in respect of the assets and affairs of the Cayman Islands branch of the Company and its creditors."

Pearson Decl. at Ex. 14.

## IV.    The JOLs Filed a Claim under FDIC-R2's Mandatory FIRREA Claims Process which Was Denied, and which May Be Asserted in Certain U.S. District Courts within 60 Days Thereof

Under its statutory obligation to manage the mandatory, exclusive FIRREA claims process,

FDIC-R1 established July 10, 2023, as the claims bar date. *See* 12 U.S.C. § 1821(d)(3)(B)-(C). On

or about July 10, 2023, the JOLs filed a proof of claim (the "Proof of Claim") in the FDIC-R2

receivership for the Bridge Bank (the "SVB Bridge Bank Receivership") in an unstated amount.

Mayorga Decl. at Ex. I. The Proof of Claim states that the "JOLs' Claim" is "contingent,

unliquidated and therefore unknown" but then goes on to state that the basis of the JOLs' Claim

"reflects damages" which arises out of the delta between:

> (i) the aggregate percentage amount of ratable distributions (the
> 'Cayman Depositor Distributions') made from the Receivership to
> depositors of SVB Cayman (the 'Cayman Depositors') on account
> of deposits made at SVB Cayman and subsequently transferred by
> the FDIC-R to the Bridge Bank on or around March 10, 2023
> (collectively, the 'Cayman Deposits'), and (ii) the aggregate

> percentage amount of ratable distributions made to depositors of the Bank (the 'US Depositor Distributions') on account of deposits made at the Bank and subsequently back-stopped by the FDIC , the Board of Governors of the Federal Reserve System, and/or the United States Department of the Treasury on or around March 10, 2023 (collectively, the 'Deposits Backstop'). The Cayman Liquidation of SVB Cayman is damaged to the extent that the percentage amount of Cayman Depositor Distributions, individually or in the aggregate, are less than the percentage amount, individually or in the aggregate, the US Depositor Distributions.

Mayorga Decl. at Ex. I.

> The Proof of Claim also lists a series of "Additional Claims:"

> . . . to the extent such claims exist and are assertable against the FDIC-R, the Receivership, the Bank, the Bridge Bank, First Citizens, the United States government (including any division thereof), the State of California (including any division, agency, or municipality thereof), or any agent, affiliate, predecessor or successor of the foregoing.

Mayorga Decl. at Ex. I. The Proof of Claim and the Additional Claims are referred to herein collectively as the "Claims."

FIRREA applies a 180-day deadline for a claim determination by the FDIC, as receiver, which in this case was January 6, 2024. *See* 12 U.S.C. § 1821(d)(5)(A). On December 26, 2023, FDIC-R2 sent a Notice of Denial of Claims to the address contained in the Proof of Claim. Mayorga Decl. at Ex. J.[7] Denial of the claim immediately enabled the JOLs to seek a *de novo* claim determination in the United States District Court for either the Northern District of California or the District of Columbia. *See* 12 U.S.C. § 1821(d)(6). But a statutory limitation forever bars the claim unless the JOLs file their complaint on or before the 60th day following denial. *Id.* Thus, the

---

[7] Even if FDIC-R2's had failed to issue a determination before the deadline, it would have resulted in a deemed denial of the claim. 12 U.S.C. § 1821(d).

JOLs can obtain a judicial determination of their Proof of Claim only if they file a complaint in an appropriate U.S. District Court on or before February 24, 2024.

## **ARGUMENT**

### I.      The Motion Should Be Dismissed For Lack Of Subject Matter Jurisdiction Under 12 U.S.C. § 1821(J)

The Court should summarily deny the Motion with prejudice on jurisdictional grounds because the requested relief seeks to violate and evade the requirements under applicable federal law. Specifically, governing law mandates that claims disputes and any related discovery against FDIC receiverships follow the requirements of FIRREA and occur in the proper forum, which respectfully, is not this Court. This is especially true here where the Branch is merely a part of SVB and the SVB Receivership is being administered by FDIC-R1.

Section 1821(j) of FIRREA, provides that "[n]o court may take any action . . . to restrain or affect the exercise of powers or functions of [FDIC-R1]," except as may be requested by the FDIC's board of directors. 12 U.S.C. § 1821(j). Section 1821(j) "broadly and unequivocally" prohibits any court from "restrain[ing] or affect[ing]" FDIC-R1's exercise of its powers or functions. *Volges v. Resolution Trust Corp.*, 32 F.3d 50, 52 (2d Cir. 1994), *cert. denied*, 515 U.S. 1162 (1995)). Section 1821(j) "is a direct manifestation of Congress's intent to prevent courts from interfering with [FDIC-R1] in the exercise of its statutory powers." *Volges*, 32 F.3d at 52.

Section 1821(j) is a "sweeping ouster of courts' power" to interfere with a Title 12 receiver's statutory powers. *Courtney v. Halleran*, 485 F.3d 942, 948 (7th Cir. 2007) (citing *Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995)). This applies to bankruptcy courts. Interpreting an analogous anti-injunction provision, the United States Supreme Court declared that "the specific preclusive language in 12 U.S.C. § 1818(i)(1) [analogue to section 1821(j)]" was "not

qualified or superseded by the general provisions governing bankruptcy proceedings[.]" *Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin.*, 502 U.S. 32, 42 (1991) (citation omitted).

Movants purport to be representatives of the Branch. But the Branch was a part of SVB and lacked existence as a separate entity. The FDIC, upon its appointment as receiver for SVB, succeeded to all rights, titles, powers, and privileges of SVB, and of any stockholder, member, accountholder, depositor, officer, or director of SVB with respect to the bank and its assets. 12 U.S.C. § 1821(d)(2)(A). FDIC-R1 also has the statutory power to take over the assets of SVB, collect all obligations due SVB, preserve and conserve the assets and property of SVB, place SVB in liquidation to realize upon its assets, and determine claims against SVB. 12 U.S.C. § 1821(d)(2)(B), (2)(D), and (d)(6)-(13).

As part of SVB, the Branch had no separate assets. Mayorga Decl. at ¶ 6. (No SVB assets associated with the Branch were located in the Cayman Islands). Mayorga Decl. at ¶ 5. Similarly, the Branch had no separate liabilities. As the Eurodollar Agreements make clear, the liabilities associated with the Branch were liabilities of SVB. Mayorga Decl. at Exs. C-E. Further, the Eurodollar Agreements confirmed that the Cayman Creditors' status in the event of SVB's failure would be that of a general creditor and not a depositor. Mayorga Decl. at Exs. C-E.

The JOLs, through the Cayman Island Proceeding and the Petition, seek an order that would carve out part of the SVB Receivership to address, in some way, assets and liabilities associated with the Branch. The JOLs explain their request for provisional relief as follows:

> [T]he JOLs are seeking to examine witnesses and obtain documents and information regarding SVB Cayman's claims in response to the Claim Denial Letter, for ultimate recovery by the SVB Cayman estate.

Memorandum at ¶ 78.

This statement reflects a two-fold objective, both of which are improper. The JOLs seek (a) to recover property from FDIC-R1 or FDIC-R2, presumably for administration of the purported "SVB Cayman estate," and (b) a court order for discovery into the disallowance of their Proof of Claim. But, because the Branch was part of SVB, an order of recognition would constitute an improper partitioning and administration of the SVB Receivership. Such an order would interfere with the powers and functions of FDIC-R1 to, among other things, administer, preserve and conserve SVB's assets and liabilities related to the Branch. 12 U.S.C. § 1821(d)(2)(B), (2)(D). This is prohibited by 12 U.S.C. § 1821(j).

Additionally, the request for discovery relating to denial of the JOLs' Proof of Claim (or the treatment of claims by other Cayman Creditors) would interfere with FDIC-R1's power to determine and resolve administrative claims because FDIC-R1's determination of a claim is not reviewable. 12 U.S.C. § 1821(d)(5)(E) ("No court may review the Corporation's determination pursuant to subparagraph (D) to disallow a claim."). Instead, a claimant's remedy following denial is to seek a *de novo* judicial determination of the claim in one of two Federal District Courts: (i) where SVB was based (in California), or (ii) Washington, D.C. (where the FDIC is based). 12 U.S.C. § 1821(d)(6)(A).

In short, the Court should dismiss the Motion and the Petition because 12 U.S.C. § 1821(j) prohibits the requested relief.

## II.    Inappropriate Forum Shopping and Venue in the Southern District of New York is Improper

The JOLs have lodged their Petition in the United States Bankruptcy Court for the Southern District of New York despite having no basis to file for such extraordinary relief. 28 U.S.C. §1410 provides:

> A case under chapter 15 of title 11 may be commenced in the district court of the United States for the district—

(1) in which the debtor has its principal place of business or principal assets in the United States;

(2) if the debtor does not have a place of business or assets in the United States, in which there is pending against the debtor an action or proceeding in a Federal or State court; or

(3) in a case other than those specified in paragraph (1) or (2), in which venue will be consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative.

28 U.S.C. § 1410.

The mere fact that one of the JOLs sits in a chair in New York and presumably directed lobbying efforts in Washington, D.C. with at least one former congressional representative does not sanction venue in this jurisdiction. *See e.g.*, *In re Patriot Coal Corp.*, 482 B.R. 718, 744 (Bankr. S.D.N.Y. 2012) (considering debtors' purposeful attempts to manufacture venue when ruling to transfer venue in the interest of justice). Despite the JOLs' efforts to manufacture jurisdiction by claiming the Branch was physically located in the Cayman Islands, the principal place of business for the Branch—which is a part of SVB—is in California. The Branch had no assets, no offices, and no employees in either the Cayman Islands or New York. Mayorga Decl. at ¶¶ 5-6. Instead, SVB operated the Branch from its California headquarters. Mayorga Decl. at ¶ 6.

Thus, venue in this district is improper. This Court should deny the Motion for the reasons noted above.

**III.    The Motion Fails The Requirements Of Chapter 15**

The Motion and requested relief also fail the requirements of Chapter 15. In fact, the requested relief, if granted, would establish legally improper and dangerous precedents by

- 19 -

permitting alleged foreign representatives to undermine the United States banking system and the well-constructed FDIC receivership process.

A.      An Overview of Chapter 15

Chapter 15 was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 to foster cooperation between the United States and foreign jurisdictions with respect to cross-border insolvency cases. Chapter 15 largely incorporates the Model Law on Cross-Border Insolvency promulgated by the United Nations Commission on International Trade Law.

Chapter 15 follows a progression to accomplish the primary goals of ancillary proceedings: recognition of foreign insolvency proceedings on the petition of a qualified foreign representative; upon recognition of the foreign proceedings, access by the foreign representative to the courts throughout the United States; and the availability of specific relief from the Bankruptcy Court, sometimes on an expedited basis. *See generally* 1 Collier Int'l Bus. Insolvency Guide ¶ 8.01 (2023). However, the foreign representative must file a petition for recognition in compliance with the provisions of §§ 1504, 1509, 1515, and 1517 of the Bankruptcy Code and demonstrate that the foreign proceeding is either a foreign main proceeding or a foreign non-main proceeding.

A foreign main proceeding is a "foreign proceeding pending in the country where the debtor has its center of main interest." 11 U.S.C. § 1502(4). And a foreign non-main proceeding is "a foreign proceeding other than a foreign main proceeding, pending in a country where the debtor has an "establishment." 11 U.S.C. § 1502(5). In either case, a foreign representative must show that the debtor subject to the foreign proceeding meets the qualifications to be a "debtor" under the Bankruptcy Code. 11 U.S.C. § 109. In the case at bar, the Motion fails to meet even the most rudimentary criteria to qualify for the extraordinary relief being requested and as set forth

- 20 -

below dooms the JOLs' attempt in every respect to gain recognition before this Court. For all the reasons set forth below, the JOLs' motion must be denied.

### B.        The Burden to Establish Provisional Relief Is on the JOLs

First, although Bankruptcy Code § 1519(a) permits a bankruptcy court to grant certain provisional relief prior to determining whether to recognize a Chapter 15 petition, the burden remains squarely on the foreign representative to demonstrate that such relief is warranted. *Compare In re Andrara Gutierrez Engenharia S.A.*, 645 B.R. 175, 181 (Bankr. S.D.N.Y. 2022) (finding that foreign representative met its burden for a preliminary injunction) *with In re Beechwood RE*, No. 19-11560, 2019 Bankr. LEXIS 2077, at *5-6 (Bankr. S.D.N.Y. Jul. 10, 2019) (denying provisional relief because the foreign representative failed to show irreparable harm); *see also In re Innua Can., Ltd.*, No. 09-16362, 2009 Bankr. LEXIS 994, at *11-12 (Bankr. D.N.J. Mar. 25, 2009).

In furtherance of seeking provisional relief, Chapter 15 requires the JOLs to establish the standard for an injunction. *See* 11 U.S.C. § 1519(e); *In re SPhinX, Ltd.*, 351 B.R. 103, 111 n.8 (Bankr. S.D.N.Y. 2006). Specifically, the JOLs must prove that (1) there is a likelihood of success on the merits, (2) absent an injunction, there is imminent irreparable harm to the Branch's assets, (3) the balance of harm tips in favor of the JOLs, and (4) that the public interest weights in favor of an injunction. *See In re Lyondell Chem. Co.*, 402 B.R. 571, 588-89 (Bankr. S.D.N.Y. 2009) (citing *In re Calpine Corp.*, 365 B.R. 401 (S.D.N.Y. 2007)).

The JOLs' attempt to shift the burden onto the FDIC to require the FDIC to "show cause" why provisional relief is therefore inappropriate. Despite this effort, the burden remains squarely on the JOLs to prove that provisional relief is warranted. *See In re Beechwood RE*, 2019 Bankr. LEXIS 2077, at *5-6. As set forth below, the JOLs have not and cannot meet that burden and provisional relief must be denied.

- 21 -

### C.        There Is No Likely Success on the Merits that the Petition Will Be Recognized

### 1.        The Branch is Excluded from Being a Debtor Under § 109(b)

The Motion fails because the Branch is excluded from being a debtor under § 109(b); thus, the JOLs cannot show a likelihood of success that the Petition will be recognized. Section 1501(c)(1) provides that Chapter 15 does not apply to "a proceeding concerning an entity, other than a foreign insurance company, identified by exclusion in section 109(b)." 11 U.S.C. § 1501(c)(1). Section 109(b) excludes various entities from being a debtor, including a "bank, savings bank, cooperative bank…or industrial bank or similar institution which is an insured bank as defined in section 3(h) of the [FDI] Act…" or "a foreign bank, savings bank, cooperative bank…that has a branch or agency (as defined in section 1(b) of the International Banking Act of 1978) in the United States." 11 U.S.C. § 109(b).

The Branch is not a separate legal entity. It is a branch of SVB. The Petition itself provides that "*Silicon Valley Bank* is registered under Part IX of the Cayman Islands Companies Act . . ." Petition at 1 (emphasis added). The Judgment also confirms that "Silicon Valley Bank," not the Branch, "was registered under the Companies Law . . ." Pearson Decl. at Ex. 15, ¶ 1. The certificate of registration for the Branch is in SVB's name and the Branch is not separately incorporated. As such, the Judgment of the Cayman Court by Justice Doyle concludes that "a branch is not a separate legal entity. The winding up order in this case would in relation [sic] to the foreign company which is the relevant legal entity." Pearson Decl. at Ex. 15.

Even absent Justice Doyle's prescient finding, this conclusion is correct. It is axiomatic that a branch of a bank is not a separate legal entity. *Branch of Citibank, N.A. v. De Navares*, 74 F.4th 8, 19 (2d Cir. 2023) (holding that under Argentinian law, the branch of Citibank "lacks independent existence"); *Trinh v. Citibank, N.A.*, 850 F.2d 1164, 1168 (6th Cir. 1988) ("[I]t is a general banking principle that the home office is ultimately liable on a deposit placed in its foreign

branch if, as here, the branch closes or otherwise wrongfully refuses to return a deposit."); *Edelmann v. Chase Manhattan Bank, N.A.*, 861 F.2d 1291, 1304 (2d. Cir. 1988) ("When a branch is closed, the depositor has a claim against the parent bank; the situs of the debt represented by the deposit 'springs back' to the home office. Ultimate liability for the debt of a branch rests upon the parent bank."); *Vishipco Line v. Chase Manhattan Bank, N.A.*, 660 F.2d 854, 863 (2d Cir.1981) ("By operating in Saigon through a branch rather than through a separate corporate entity, Chase accepted the risk that it would be liable elsewhere for obligations incurred by its branch.").

SVB is undisputedly a bank. *See* Pearson Decl. at ¶ 4. Thus, SVB is excluded from being a debtor under § 109(b), which is precisely why SVB—including the Branch—is currently being liquidated in the SVB Receivership. In the Petition, the JOLs argue that this case is analogous to *In re Irish Bank Resolution Corp. Ltd.*, 538 B.R. 692 (D. Del. 2015). It is not. The Irish Bank Resolution Corporation Limited was unequivocally a stand-alone, foreign bank incorporated in Ireland, whereas the Branch is a foreign branch of a United States bank. Compare *id.* at 695 *with* Pearson Decl. at ¶¶ 4-7; Mayorga Decl. at ¶ 6, Ex. A. Since the Branch is not a separate legal entity from SVB, the Branch is excluded from being a debtor under § 109(b).

## 2. The Branch Is Not a "Person" Eligible for Chapter 15 Relief under § 109(a)

The JOLs cannot demonstrate a likelihood of success on the merits because the Branch, which is part of SVB, a bank (which is in an FDIC receivership), does not qualify as a debtor under Chapter 15. Stated somewhat differently, provisional relief should not be granted because the Branch cannot qualify as a "person" eligible for Chapter 15 relief pursuant to § 109(a) of the Bankruptcy Code. Section 103(a) provides that Chapter 1 of the Bankruptcy Code "appl[ies] in a case under chapter 15." 11 U.S.C. § 103(a). "Section 109, of course, is within Chapter 1 of Title 11 and so, by the plain terms of the statute, it applies 'in a case under chapter 15.'" *Drawbridge*

*Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 247 (2d. Cir. 2013)

(vacating and remanding a recognition order and discovery order because the underlying

bankruptcy court did not determine whether the foreign company qualified as a debtor under

§ 109(a) where the foreign company did not have any domicile, place of business, or property in

the United States, as required by § 109(a)). Thus, "the debtor that is the subject of the foreign

proceeding, therefore, must meet the requirements of Section 109(a) before a bankruptcy court

may grant recognition of the foreign proceeding."[8] *In re Barnet*, 737 F.3d at 247.

The Movants do not. Bankruptcy Code § 109(a) states, "*only a person* that resides or has a

domicile, a place of business, or property in the United States, or a municipality, may be a debtor

under this title." 11 U.S.C. § 109(a) (emphasis added). As held by the Second Circuit, § 109(a)

"adds a requirement for the kinds of '*person*' that 'may be a debtor under this title.'" *In re Barnet*,

737 F.3d at 249 (emphasis added) (quoting 11 U.S.C. § 109(a)). Under the Bankruptcy Code,

"[t]he term 'person' includes individual, partnership, and corporation, but does not include

governmental unit . . ." 11 U.S.C. § 101(41). Bankruptcy Code § 101(9) defines "corporation" to

include (i) an "association having a power or privilege that a private corporation . . . possesses;"

(ii) "partnership association organized under a law that makes only the capital subscribed

responsible for the debtors of such association;" (iii) a "joint-stock company;" (iv) an

"unincorporated company or association;" or (v) a "business trust." 11 U.S.C. § 101(9). The

Branch does not fit into any of these categories. Moreover, as demonstrated further below, the

---

[8] Importantly, the JOLs concede the applicability of Bankruptcy Code Chapter 1 when they state, in a footnote, their desired intent to have Bankruptcy Code § 108(a) delay the FIRREA-mandated 60-day deadline for two years after the date of any future recognition order. *See* Memorandum at 2, n.1. Of course, any such order would affect FDIC-R1's power to determine and resolve administrative claims in violation of 12 U.S.C. § 1821(j). See 12 U.S.C. § 1821(d)(6)-(13).

Branch cannot qualify as a "person" under § 109(a) because it is a branch of SVB. The JOLs'

tortured assertion that they represent an "estate" or "trust" does not alter this result.

### a.    The Branch Does Not Qualify as a "Person" Because it Is Not a Separate Legal Entity

The Branch cannot qualify as a "person" under § 109(a). In fact, irrespective of whether

the Branch is characterized as a branch of SVB or as an "estate" or "trust" as the JOLs (incorrectly)

contend, the Branch does not meet the requirements of § 109(a) to be a debtor under the

Bankruptcy Code. Notably, the Branch is not an individual, partnership, or separate corporation

under the Bankruptcy Code. As the JOLs repeatedly concede, at all relevant times prior to the

filing of the Petition, the Branch was a branch of SVB. Memorandum at ¶¶ 4-7. As set forth above,

the Branch is not a separate legal entity from SVB.  *See Branch of Citibank, N.A.*, 74 F.4th at 19;

*Trinh*, 850 F.2d at 1168; *Edelmann*, 861 F.2d at 1304; *Vishipco Line*, 660 F.2d at 863. The branch

of a bank does not have "characteristics which are similar to a partnership or corporation."

*Asociación de Titulares de Condominio Castillo v. DiMarco*, 581 B.R. 346, 360 (B.A.P. 1st Cir.

2018). The branch operation of a bank is not a "person" within the meaning of § 101(41).

Manifestly, the Branch—as a branch and not a separate legal entity—does not have the

"power or privilege that a private corporation . . . possesses" in accordance with § 101(9).

Furthermore, the facts belie any indication that the Branch is something other than a branch of

SVB. While the JOLs seek to rely on the Intra-Group Service Level Agreement (the "Intra-Entity

Agreement") between the head office of SVB and the Branch, such reliance is misplaced. The

Intra-Entity Agreement did not grant the Branch separate legal status. In fact, the Intra-Entity

Agreement has no legal effect. It states, in relevant part, "[w]hilst this Agreement has been written

based on the principles of the law, both Parties recognize that it is an intra-entity agreement and

therefore has no formal legal basis." Mayorga Decl. at Ex. B, § 31.1. Thus, the Branch was

essentially nothing more than a plaque on a wall and a drop box. Its purported creditors, including

the Cayman Creditors, are creditors of SVB. Many of those creditors have filed claims in the SVB

Receivership, some of which have been allowed. Mayorga Decl. at ¶ 14. Clearly, the Branch

cannot be considered a "corporation" and, consequently, is not a "person" as required by § 109(a).

### b.   An "Estate" or "Trust" Is not a "Person" under the Bankruptcy Code

The JOLs attempt to sidestep *Barnet* and the law of the Second Circuit by relying on

strained statutory construction by claiming they represent a "trust" or "estate" which constitutes

an "entity" and in turn a "debtor" for the purpose of Chapter 15. Specifically, the JOLs rely on the

definition of "debtor" in Bankruptcy Code § 1502(1), which provides that for purposes of

Chapter 15, a "debtor" is "an entity that is the subject of a foreign proceeding." 11 U.S.C.

§ 1502(1). Petition at ¶¶ 131-135. The gist of the JOLs argument appears to be that the Cayman

Islands Proceeding converted the Branch, a part of the SVB receivership, into a separate entity,

with its own estate, that is the subject of a foreign proceeding. That argument lacks merit and is

fundamentally at odds with both Title 12, which vests FDIC-R1 with control of all SVB assets,

and corporate law generally. *See*, generally, *Edelmann,* 861 F.2d at 1304.

The JOLs' argument was also disposed of by the Second Circuit in *Barnet* in its analysis

of § 109(a). *See In re Berau Cap. Res. Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015). The

Bankruptcy Code defines "entity" to include a "person, estate, trust, *governmental unit and United*

*States Trustee.*" 11 U.S.C. § 101(15) (emphasis added). The Second Circuit held, "[t]he definition

of 'debtor' in Section 1502, however, does not block application of Section 109 within

Chapter 15." *Barnet*, 737 F.3d at 249. Specifically, the Second Circuit found that § 109(a) does

not define 'debtor,' "[r]ather, it adds a requirement for the kinds of '*person*' that 'may be a debtor

under this title.'" *Id.* (emphasis added) (citing 11 U.S.C. § 109(a)). The Second Circuit then held

"[t]his linguistic parallelism makes clear that Section 1502 supplants Section 101—*i.e.*, it

supplants the definition of debtor within the context of Chapter 15—but it does not supplant requirements 'for a debtor under this title' not included in the definition." *Id.* Thus, the term "entity" in § 1502(1) does not eliminate the requirement that a debtor be a "person" pursuant to § 109(a). *See In re Barnet*, 737 F.3d at 249.

To interpret the provisions as sought by Movants would violate the canons of statutory construction. "Statutory enactments should, moreover, be read so as to give effect, if possible, to every clause and word of a statute." *Id.* at 247 (quoting *United States v. DiCristina*, 726 F.3d 92, 96 (2d Cir. 2013)); *see generally In re Bear Stearns High-Grade Structured Master Fund, Ltd.*, 389 B.R. 325 (S.D.N.Y. 2008) (holding that the Bankruptcy Court was right to reject proposition that a foreign proceeding was a main proceeding "because the Petitioners say so"). The definition of "entity," as conceded by the JOLs, includes governmental units and the United States Trustee. *See* 11 U.S.C. § 101(15). Under the JOLs' interpretation of § 109(a), the United States Trustee could be the subject of a petition under Chapter 15. This is an absurd result and directly in contravention of Second Circuit law. To qualify as "debtor" under § 109(a), the Branch must be a "person," and it simply is not.

If the Branch is considered an "estate," an estate does not qualify as a "person" under § 109(a). "If an estate had already been included in the definition of a person, Congress would not have included it separately in the definition of an entity." *In re Walters*, 113 B.R. 602, 604 (Bankr. D.S.D. 1990) (citing *In re Estate of Whiteside by Whiteside*, 64 B.R. 99, 100-01 (Bankr. E.D. Cal. 1986)); *In re 299 Jack-Hemp Assocs.*, 20 B.R. 412, 413 (Bankr. S.D.N.Y. 1982) ("Congress left no doubt that 'person' was not to include an estate."). Importantly, "the legislative history behind who may be a debtor states that the definition of person does not include an estate or a trust." *In re Walters*, 113 B.R. at 604 (internal citations omitted).

Similarly, if the Branch is considered a "trust," the JOLs still cannot meet the requirements under § 109(a). Only a "business trust" qualifies as a "corporation" under § 101(9). *Cath. Sch. Emp. Pension Tr. v. Abreu (In re Cath. Sch. Emp. Pension Tr.)*, 599 B.R. 634, 652 (B.A.P. 1st Cir. 2019). However, "a trust that is not a 'business trust' generally is not eligible to file for bankruptcy protection." *In re Quadruple D Trust*, 639 B.R. 204, 213 (Bankr. D. Col. 2022). Federal law governs the interpretation of terms in the Bankruptcy Code. *See Lamar, Archer, & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018). A "business trust" has certain "salient features," including:

> (1) trust "created and maintained" for a business purpose;
> (2) title to property held by trustees;
> (3) centralized management;
> (4) transferability of interests; and
> (5) limited liability.

*In re Quadruple D. Trust*, 639 B.R. at 230 (citing *Morrisey v. Comm'r*, 296 U.S. 344 (1935)). The JOLs cannot meet this test. The fictional "trust" created by the JOLs through the Cayman Court is not for a business purpose. The Branch ceased doing business when SVB failed, well before the JOLs' appointment. Mayorga Decl. at ¶ 9. As set forth herein, the JOLs do not hold title to any relevant property and there are no relevant transferable interests because all interests of the Branch are interests of FDIC-R1.

Accordingly, the JOLs cannot establish a likelihood of success that the Branch qualifies as a debtor in Chapter 15 under any characterization.

> **3.      The Foreign Proceeding Cannot Be Recognized as a "Foreign Main Proceeding" Because the Branch's COMI Is in the United States, Which Is Ascertainable by Third-Parties**

Even if this Court were to find that the Branch qualified as a debtor under Chapter 15 (which it should not), the proceeding cannot be recognized as a "foreign main proceeding." Bankruptcy Code § 1502(4) defines a "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). The

COMI is presumed to be the place of registered offices unless evidence rebuts such presumption. *In re Bear Stearns*, 389 B.R. at 334. "[T]he COMI presumption may be overcome, particularly in the case of a 'letterbox company." *Id.* at 336. While "a debtor's COMI is determined as of the time of the filing of the Chapter 15 petition . . . , to offset a debtor's ability to manipulate its COMI, a court may also look at the time period between the initiation of the foreign liquidation proceeding and the filing of the Chapter 15 petition." *In re OAS S.A., et al.*, 533 B.R. 83, 100 (Bankr. S.D.N.Y. 2015) (quoting *Morning Mist Holdings Ltd. v. Kyrs* (*In re Fairfield Sentry Ltd.*), 714 F.3d 127, 133 (2d Cir. 2013)). Importantly, "[t]he legislative history also indicates that the statutory presumption of section 1516(c) may be of less weight in the event of a serious dispute." *In re SPhinX, Ltd.*, 351 B.R. at 117. "The presumption that place of the registered office is also the center of the debtor's main interest is included for speed and convenience where there is no serious controversy." H.R. Rep. 109-31, pt. 1, 109th Cong. 1st Sess. A 112-113 (2005). As noted by the Second Circuit, the "relevant principle . . . is that the COMI lies where the debtor conducts its regular business, so that the place is ascertainable by third parties." *In re Fairfield Sentry Ltd.*, 714 F.3d at 130; *see also In re SPhinX, Ltd.*, 351 B.R. at 119 ("[I]f third parties would objectively locate the administration of such a debtor's interests elsewhere, the presumption would be rebutted.").

Courts consider several relevant factors when evaluating COMI, including:

> (i) the location of the debtor's headquarters;
>
> (ii) the location of those who actually manage the debtor (which conceivably could be the headquarters of a holding company);
>
> (iii) the location of the debtor's primary assets;
>
> (iv) the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or
>
> (v) the jurisdiction whose law would apply to most disputes.

*Id.* at 117. "In addition, the court may consider the location of the debtor's 'nerve center,' 'including from where the debtor's activities are directed and controlled, in determining a debtor's COMI.'" *In re OAS S.A.*, 533 B.R. at 100-101 (quoting *Fairfield Sentry*, 714 F.3d at 138, n.10). "Finally, international sources of law that the court may consider 'underscore the importance of factors that indicate regularity and ascertainability.'" *Id*. at 101 (quoting *Fairfield Sentry*, 714 F.3d at 138).

### a.    SVB's COMI Is in California

The burden of proving the location of the COMI is on the party seeking recognition. Despite the JOLs' attempts to manufacture a separate entity, the COMI for SVB—and all of its branches—is in the United States, which can be ascertained by third-parties, including the Cayman Creditors. SVB—and the Branch—conducted its regular business in the United States. SVB was founded and headquartered in California. Mayorga Decl. at ¶ 6. SVB was registered as a "foreign company" in the Cayman Islands, whereas the Branch itself was not registered at all. Mayorga Dec. at Ex. A. The Eurodollar Agreements are all governed under California law. Mayorga Decl. at Exs. C-E. Further, SVB's "nerve center" is in California. Mayorga Decl. at ¶ 6, Ex. B. In fact, the JOLs concede that the California "nerve center" provided finance, IT services, legal, and risk management. Pearson Decl. at ¶ 30. Here, the Cayman Creditors could ascertain that the COMI was in the United States—specifically California—because the Cayman Creditors knew from the Eurodollar Agreements that their accounts were not only governed by U.S. law, but involved a U.S. Bank—SVB. Mayorga Decl. at Exs. C-E.

Importantly, SVB's creditors know that the location of the administration of SVB's assets is in the United States, not the Cayman Islands. SVB—not the Branch—was registered as a "foreign company" in the Cayman Islands, indicating to any customers that SVB was located outside of the Cayman Islands. In fact, pursuant to SVB's Class B License, SVB was forbidden

from carrying on local business in the Cayman Islands.  Pearson Decl. at Ex. 2, 10, § 6(6). Prior to

the failure of SVB, any of SVB's Clients who entered into a Eurodollar Agreement would see on

the header and footer of every page "Silicon Valley Bank." Mayorga Decl. at Exs. C-E. Those

Clients utilized SVB's online banking portal, not a separate portal for the Branch. Mayorga Decl.

at Exs. C-E. The signature block on each agreement was for "Silicon Valley Bank." Mayorga Decl.

at Exs. C-E. While SVB's creditors are worldwide, particularly given that Cayman Islands

residents were not even permitted to open accounts under the Eurodollar Agreements, they are

actively participating in the SVB Receivership, which is occurring in the United States.

Importantly, many of the Cayman Creditors have submitted claims through the SVB Receivership,

demonstrating that a COMI in the United States is ascertainable by third-parties, including the

Cayman Creditors. Thus, the overwhelming facts demonstrate that the Branch's COMI is in the

United States. Accordingly, as the COMI is in the United States, there is not a likelihood of success

that the Cayman Proceeding will be considered a foreign main proceeding.

　　　　Even characterizing the Branch as a separate entity, in contravention of the law, the

presumption is rebutted. This Court's decision in *In re SPhinX, Ltd.* is instructive. In *SPhinX*, the

Court determined that the COMI was located outside the Cayman Islands. 351 B.R. at 119. When

evaluating the COMI, the Court found "important objective factors point to the SPhinX Funds'

COMI being located outside of the Cayman Islands," including:

> As far as the administration of the Debtors' interests is concerned,
> the SPhinX Funds' hedge fund business was conducted by
> PlusFunds outside of the Cayman Islands, as were most of the
> SPhinX Funds' back-office operations, by DPM. The only business
> done in the Cayman Islands apparently was limited to those steps
> necessary to maintain the SPhinX Funds in good standing as
> registered Cayman Islands companies and certain SPhinX Funds as
> SPCs. There were no employees or managers in the Cayman Islands,
> and the Debtors' boards, which contained no Cayman Islands
> residents, never met in the Cayman Islands.

*Id.* The Court also looked to "pragmatic considerations," such as that, other than corporate minute books and similar records, there were no assets located in the Cayman Islands, and thus, the liquidators would be required to seek assistance from other courts to realize on such assets. *Id.* at 119-120.

The objective factors here—as in *SPhinX*—show that the COMI is located outside the Cayman Islands in the United States. The Branch's business was conducted in the United States. The Branch itself is not registered in the Cayman Islands, SVB was. The registration provides that the Branch is a branch of SVB—which was headquartered in California. The "back-office operations" were conducted by SVB in the United States. The Branch did not have an office or employees and does not have any assets in the Cayman Islands, including books and records. Similarly, as discussed further below, the "pragmatic considerations" also indicate that the COMI should not be in the Cayman Islands. The Branch has no assets in the Cayman Islands and all assets, including the records sought by the JOLs, were property of SVB and are being administered by FDIC-R1. Further, the customers—who were made frequently aware that they were indeed customers of SVB and not the Branch itself—are availing themselves of the receivership process. Accordingly, the JOLs have not met their burden to establish the COMI in the Cayman Islands. *See In re OAS S.A.*, 533 B.R. at 101-103 (finding COMI was in Brazil, despite "special purpose vehicle" subsidiary's incorporation in Austria, where it did not conduct business, own assets, have a physical location or employ anyone in Austria and had creditors located worldwide); *In re Bear Stearns*, 389 B.R. at 337 (denying recognition of foreign proceeding involving hedge funds registered in the Cayman Islands where all of the assets were in the United States, there were no employees or managers in the Cayman Islands and all of the books and records were located in the

United States); *In re SPhinX Ltd.*, 351 B.R. at 119. Accordingly, the JOLs are not entitled to provisional relief.

   **b.**  **The JOLs Cannot Demonstrate COMI in the Cayman Islands, and the JOLs' Attempt to Do So Is Not in Good Faith**

  As discussed throughout, the JOLs have attempted to modify their status, particularly when it comes to eligibility, by obtaining an order from the Cayman Court to characterize the Branch as an "estate" or "trust." The JOLs' shell game is a bad faith manipulation attempt and should fail. As set forth by the Second Circuit, "a court may consider the period between the commencement of the foreign insolvency proceeding and the filing of the Chapter 15 petition to ensure that a debtor has not manipulated its COMI in bad faith." *Fairfield Sentry Ltd.*, 714 F.3d at 137. The COMI determination is always "subject to an inquiry as to whether the process has been manipulated." *Id.* at 129. "The jurisprudence emerging from these courts does not preclude looking into a broader temporal COMI assessment where there may have been an opportunistic shift to establish COMI (*i.e.*, insider exploitation, untoward manipulation, overt thwarting of third-party expectations)." *In re Fairfield Sentry Ltd.*, 440 B.R. 60, 66 (Bankr. S.D.N.Y. 2010).

  Once again, *In re SPhinX Ltd.* is instructive. The liquidators in *In re SPhinX Ltd.* filed the Chapter 15 petition, in large part, for the purpose of frustrating a settlement by obtaining a stay pending appeal upon recognition. 351 B.R. at 121. The Court found such tactics give "the clear appearance of improper forum shopping." *Id.* Here, the JOLs give away their intent to forum shop for the specific purpose of impeding the claims resolution process underway by the FDIC-Rs within their first footnote, which acknowledged that the purpose of the Petition and the Motion is to side-step the Congressionally mandated 60-day period to request *de novo* review of the FDIC-R2's denial of the Proof of Claim and attempt to gain leverage in the process. Memorandum at 4,

n.1. Thus, even those courts that have held that a debtor's COMI should be determined on the date

that the petition for recognition was filed are also likely to be offended by such tactics.

The "estate" or "trust" activities—for a week prior to the filing of the Petition—are

virtually non-existent for COMI purposes, and woefully short of what is needed to support COMI

determination, particularly where there is an active process in place for the Cayman Creditors. In

*In re Creative Fin. Ltd.*, 543 B.R. 498 (Bankr. S.D.N.Y. 2016), although this Court did discuss the

debtor's bad faith in filing the petition, it held that because the debtor's activities in the British

Virgin Islands were so minimal between the commencement of the liquidation and the filing of

the Chapter 15 petition, a COMI could not be established. 543 B.R. at 520.  Accordingly, this

Court dismissed the case on COMI grounds. *Id.* Understandably, the Petition here cannot be

sustained given the eleventh-hour gamesmanship perpetrated by the JOLs.

### 4. There Is No Basis for Non-Main Recognition as that Relief Has Not Been Adequately Addressed in the Motion

Nowhere in the moving papers for provisional relief or the Petition do the JOLs even offer

to address the basis for requesting non-main recognition. Significantly, if a COMI is not located

where the JOLs claims it is, the ancillary case does not automatically revert to a nonmain

proceeding. The JOLs must demonstrate that the "foreign proceeding" is pending where the debtor

has an "establishment." 11 U.S.C. § 1502(5). An establishment is defined as any place of

operations where the debtor carries out nontransitory activity. 11 U.S.C. § 1502(2).

"The existence of an 'establishment' is essentially a factual question, with no presumption

in [a foreign representative's] favor.*" In re Bear Stearns*, 389 B.R. at 338. "Several factors

'contribute to identifying an establishment: the economic impact of the debtor's operations on the

market, the maintenance of a 'minimum level of organization' for a period of time, and the

objective appearance to creditors whether the debtor has a local presence." *See In re Modern Land*

*(China) Co., Ltd.*, 641 B.R. 768, 784 (Bankr. S.D.N.Y. 2022) (quoting *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 85 (Bankr. S.D.N.Y. 2011)). To have an "establishment" in a particular country, "the debtor must conduct business in that country. The location should constitute a seat for local business activity for the debtor." *In re Creative Fin.*, 543 B.R. at 520. "The terms 'operations' and 'economic activity' require a showing of a local effect on the marketplace, more than mere incorporation and record-keeping and more than just the maintenance of property." *Id.*; *see also In re Modern Land*, 641 B.R. at 784 ("Additionally, courts have required proof of more than a 'mail-drop presence' to satisfy the establishment requirement.").

Critically to this case, restructuring and insolvency proceedings themselves are not enough to prove an "establishment." *Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1028 (5th Cir. 2010) (holding that if a foreign "bankruptcy proceeding and associated debts [themselves] . . . demonstrate an establishment . . . [t]here would be no reason to define establishment as engagement in nontransitory economic activity. The petition for recognition would simply require evidence of the existence of the foreign proceeding."); *In re Modern Land*, 641 B.R. at 785 ("The Cayman restructuring cannot itself constitute nontransitory economic activity to support recognition as a foreign nonmain proceeding."); *In re Creative Fin. Ltd.*, 542 B.R. at 520 ("The Debtors never had an 'establishment' in the BVI before the Liquidator was retained, and the types of things the Liquidator did (and, for that matter, did not do) were not the type that could permit an 'establishment' to be found."); *In re British Am. Ins. Co. Ltd*., 425 B.R. 884, 915 (Bankr. S.D. Fla. 2010) (finding that the liquidator's actions pursuant to the appointment, such as "retention of counsel and accountants, investigation of assets and liabilities, and reporting to the [foreign court], do not constitute business activities").

Thus, the activities of the JOLs, whether under the guise of a branch, "trust" or "estate," can never suffice for supporting an establishment. Here, at the time of the Petition, the only activity that can be attributed to those various hats is in the United States where SVB is located through the SVB Receivership. The Branch ceased operating long before the JOLs were appointed. Mayorga Decl. at ¶ 9. This case is analogous to this Court's findings in *In re Modern Land*. While the *Modern Land* debtor maintained a registered office in the Cayman Islands and initiated a restructuring proceeding there, the debtor was "unable to point to any additional connections to the Cayman Islands that might constitute nontransitory economic activity." 641 B.R. at 786. The *Modern Land* debtor could not provide the Court with "evidence of 'more than mere incorporation and record-keeping and more than just the maintenance of property.'" *Id.* at 787 (quoting *In re Creative Fin. Ltd.*, 543 B.R. at 520). The Branch is not even registered in the Cayman Islands, while SVB was. The JOLs cannot show incorporation because SVB was incorporated in the United States, the Branch was not separately incorporated, and the Branch had closed prior to the date the Petition was filed. Mayorga Decl. at ¶¶ 5, 9. The Branch did not maintain property in the Cayman Islands and the JOLs have not shown any evidence of nontransitory economic activity, nor can they. Thus, the JOLs have failed to carry their burden to show that there is a likelihood of success that the foreign proceeding will be recognized as a foreign non-main proceeding. Moreover, even if the Court were inclined to recognize the Cayman Islands Proceeding as a "foreign nonmain proceeding," the Court "must be satisfied that the relief [requested under § 1521] relates to assets that, under the law of the United States, should be administered in the foreign nonmain proceeding or concerns information required in that proceeding." 11 U.S.C. § 1521(c). The assets—including any funds and records—are property of FDIC-R1 as former assets of SVB. There is no evidence that such assets would be administered in the Cayman Islands Proceeding, particularly where they

cannot be under FIRREA. Similarly, the records of SVB are not required in the Cayman Islands

Proceeding because the claims resolution process is required to occur in the United States pursuant

to FIRREA. Thus, the relief sought in the Motion cannot be granted.

### 5.      The Foreign Proceeding Is Not a Collective Proceeding

As set forth above, in order for the foreign proceeding to be recognized, the JOLs must

also establish the existence of a foreign proceeding. 11 U.S.C. § 1517. The Bankruptcy Code

defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign
> country, including an interim proceeding, under a law relating to
> insolvency or adjustment of debt in which proceeding the assets and
> affairs of the debtor are subject to control or supervision by a foreign
> court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). "Courts construing section 101(23) have required the petitioner to establish

each of seven criteria," including that the proceeding is "collective in nature." *In re Glob. Cord

Blood Corp.*, No. 22-11347 (DSJ), 2022 Bankr. LEXIS 3426, at *20 (Bankr. S.D.N.Y. Dec. 5,

2022).

"When determining whether a proceeding was collective in nature, a court should examine

'both the law governing the foreign action and the parameters of the particular proceeding as

defined in, for example, orders of a foreign tribunal overseeing the action.'" *In re PT Bakrie

Telecom Tbk*, 628 B.R. 859, 873 (Bankr. S.D.N.Y. 2021) (*quoting In re Ashapura Minechem Ltd.*,

480 B.R. 129, 136 n. 37, 141 n. 85 (S.D.N.Y. 2012)). "Whether a proceeding is 'collective' . . .

typically speaks in terms of the proceeding's treatment of and potential benefit to creditors, as well

as emphasizing that the proceeding must concern all interests or the interests of a creditor body as

a whole, not just individuals." *In re Glob. Cord Blood Corp.*, 2022 Bankr. LEXIS 3426, at *21-

22. As stated by this Court:

- 37 -

> The word 'collective' in section 101(23) contemplates both the consideration and eventual treatment of claims of various types of creditors, as well as the possibility that creditors may take part in the foreign action. Notice to creditors, including general unsecured creditors, may play a role in this analysis. In determining whether a particular foreign action is collective as contemplated under section 101(23), it is appropriate to consider both the law governing the foreign action and the parameters of the particular proceeding as defined in, for example, orders of the foreign tribunal overseeing the action.

*In re Ashapura Minechem Ltd.*, 480 B.R. at 137; *see also In re Gold & Honey, Ltd.*, 410 B.R. 357, 368-72 (Bankr. E.D.N.Y. 2009) (finding petitioners did not meet their burden in showing receivership proceeding was collective in nature because it did not require receivers to consider the rights and obligation of all creditors and the debtor's assets and affairs were not subject to control or supervision of a foreign court).

As set forth herein, the JOLs were appointed to represent a specific creditor group, the Cayman Creditors, which are a subset of the creditors of SVB. The Judgment of the Cayman Court describes the reason for appointing the JOLs as, "[t]he position of the Cayman depositors needs to be investigated further and where appropriate safeguarded." Pearson Decl. at Ex. 15, ¶ 63. The Cayman Islands Proceeding is the antithesis of a collective proceeding. It is a proceeding for the sole purpose of representing a specific constituency within the SVB Receivership—the Cayman Creditors for the specific purpose of investigating and "safeguarding" the interests of Cayman Creditors. Ironically, the later purpose undermines the current collective proceedings—the SVB Receivership and the Bridge Bank Receivership. Accordingly, the JOLs cannot meet their burden to establish a likelihood of success that this Court will find the Cayman Islands Proceeding to be a "collective proceeding" for purposes of recognition.

**D.**   **The Branch Will Not Suffer Irreparable Harm Without the Requested Discovery Because the Discovery Is Not Warranted under 11 U.S.C. § 1521(a)(4) and Discovery Can Be Sought in the Receivership**

Section 1521(a)(4) authorizes discovery "concerning the debtor's assets, affairs, rights, obligations or liabilities" if certain specified criteria are met. 11 U.S.C. § 1521(a)(4). Specifically, the requested discovery must be "necessary" to (a) "effectuate the purpose of [Chapter 15]," and (b) "protect the assets of the debtor or the interests of the creditors." *Id.* Moreover, even if those requirements are met, the court may grant requested relief "*only if* the interest of the creditors and other interested entities . . . are sufficiently protected." 11 U.S.C. §1522(a) (emphasis added). A foreign representative bears the burden of "demonstrate[ing] that its requests meet the statute's criteria." *In re Glitnir banki hf.*, No. 08-14757 SMB, 2011 WL 3652764, at *6 (Bankr. S.D.N.Y. Aug. 19, 2011).

**1.**   **The Requested Discovery Does Not "Effectuate the Purpose" of Chapter 15**

Nothing about the requested discovery is "necessary to effectuate the purpose of" Chapter 15. The primary purpose of Chapter 15 is to "provide effective mechanisms for dealing with cases of cross-border insolvency," including "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a). Relief under section 1521 "turns on subjective factors that embody principles of comity." *In re Agrokor d.d.*, 591 B.R. 163, 186 (Bankr. S.D.N.Y. 2018); *see also In re Daewoo Logistics Corp.*, 461 B.R. 175, 178 (Bankr. S.D.N.Y. 2011) ("[P]rinciples of comity and cooperation with a domestic court's foreign counterparts should inform the extent to which that court makes post-recognition relief available to a foreign representative."). "Comity is 'the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the

rights of its own citizens, or of other persons who are under the protection of its laws.'" *In re Commodore Int'l*, 242 B.R. 243, 256 (Bankr. S.D.N.Y. 1999) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)).

A true construction of the Winding-Up Order is an order appointing liquidators to represent a specific group of creditors within the ongoing collective receivership proceedings of SVB. The JOLs are effectively appointed as representatives of one class of creditors within the SVB Receivership, Clients of the Branch. They characterize their appointment, in this Motion and the Petition, as attempts to obtain procedural fairness for their creditor group. This is incorrect and unnecessary because the Clients of the Branch and the JOLs have access to the courts, due process, and discovery by seeking *de novo* review of their claims in either the Northern District of California or the District of Columbia. 12 U.S.C. § 1821(d)(6).

The true purpose of the requested discovery is not procedural fairness, but to gain an improper litigation advantage. The JOLs seek to challenge the proper application of U.S. banking law that subordinates their claims (as foreign non-deposits) to the claims of FDIC depositors. The Motion is an improper collateral attack upon U.S. banking legislation (and the SVB Receivership) to gain leverage in an effort to elevate the status of the Cayman Creditors' claims beyond their legal entitlement.

The JOLs have failed to meet their burden that the requested discovery is necessary to effectuate the purposes of Chapter 15. Thus, the Motion should be denied.

### 2. The Requested Discovery Is Not Necessary to Protect the Branch's Assets

Even if the Motion satisfied the first prong of § 1521(a)(4), the JOLs do not carry their burden to show that the discovery sought is "necessary . . . to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a)(4). There is no risk of dissipation of the Branch's

assets—it has none. Mayorga Decl. at ¶ 6. The assets belonged to SVB and are currently under control of FDIC-R1. The only "asset" of the JOLs is their right to seek review of the denial of the Proof of Claim, and, as the JOLs acknowledge, the SVB Receivership and FIRREA have a mechanism for the JOLs to address the denial of their Proof of Claim. They may file a complaint for *de novo* review, wherein the JOLs may obtain discovery. Discovery is not required before filing such a complaint. Transparent attempts to evade the requirements of FIRREA do not constitute irreparable harm. Accordingly, the JOLs have once again failed to meet their burden.

> **E.     The Balance of Hardships Weighs in Favor of the FDIC Because the Relief Sought Does Not Sufficiently Protect the FDIC's Interests**

Even when § 1521(a)(4) is satisfied, relief under that section may only be granted if "the interests of the creditors and other interested entities . . . are sufficiently protected." 11 U.S.C. § 1522(a). Section 1522 embodies the policy that "there should be 'a balance between relief that may be granted to the foreign representative and the interests of the person that may be affected by such relief.'" *In re Rede Energia S.A.*, 515 B.R. 69, 90 (Bankr. S.D.N.Y. 2014); *see In re Ennia Caribe Holding N.V.*, 596 B.R. 316, 322 (Bankr. S.D.N.Y. 2019) ("A determination of sufficient protection requires a balancing of the respective parties' interests."). As injunctive relief is often highly intrusive, it is expected that interested parties are protected and safeguarded from abuse by such expedited relief. The required analysis balances the respective interests based on the relative harms and benefits in light of the circumstances presented. *See*, *Jaffe v. Samsung Elecs. Co.*, 737 F.3d 14, 31 (3d Cir. 2013).

Given the overarching statutory mandate given to the FDIC to maintain stability and public confidence in the nation's financial system, and the claims resolution process that has been underway for almost a year, a process in which many of the Cayman Creditors have already participated to great lengths to date, the balance of harms weighs in favor of the Objectors. There

is no justification for the wide-ranging discovery that is being contemplated, particularly when there is a process in place to address all the discovery needs of any creditor, including the JOLs. Granting the relief herein would only serve to distract the FDIC-Rs from the congressionally-mandated receivership process, which is for the benefit of all creditors, including the Cayman Creditors.  Thus, the relief sought does not sufficiently protect the Objectors' interests.

At the very least, the relief[9] should be narrowly tailored and subject to protective measures that guard confidential and proprietary information. Further, as discussed below, the *Touhy* regulations would apply to any discovery. *See* 12 C.F.R. Part 309.

### F.    Granting the Requested Discovery Would Not Be in the Public Interest

Contrary to the JOLs' assertions, the public interest at issue is the interest to conduct a fair claims assessment and allowance process pursuant to the law established by Congress in the FDI Act. "There is almost no legitimate private expectation which outweighs the public interest in enforcing FIRREA." *First Nationwide Bank*, 770 F. Supp. at 1541. The JOLs argue that "there is no strong federal policy in connection with FDIC receiver claim disputes . . ." Memorandum at ¶ 80. The cases cited by the JOLs provide no support for that argument. None of these cases stand for the proposition that a purported claimant in an FDIC receivership can contradict the explicit federal statutory provisions of FIRREA or any other explicit regulations. *O'Melveny & Meyers v.*

---

[9] The Court should note that as part of the relief that is being requested under section 1519(a), the Branch is seeking "staying execution against the debtor's assets," "entrusting the administration or realization of all or part of the debtor's assets," plus relief referred to in paragraph (3), (4), and (7) of § 1521(a). The latter provisions relate to "suspending the rights to transfer, encumber, or dispose of assets of the debtor," "providing for the examination of witnesses" and related discovery "concerning the debtor's assets," and "granting any additional relief," respectively. Again, to the extent that the JOLs are requesting such relief, it is respectfully submitted that such a request is unprecedented given the fact that the putative debtor here has no assets separate and apart from those of SVB, and its successor, FDIC-R1. Far from being "orphaned," the Branch never left its home, which is in the United States. In any event, such relief is subject to the Objectors' rights to sufficient protection as dictated by section 1522(a).

*FDIC*, 512 U.S. 79, 85 (1994) ("[W]e of course would not contradict an explicit federal statutory provision. Nor would we adopt a court-made rule to supplement federal statutory regulation that is comprehensive and detailed."); *Pub. Utils. Comm'n*, 214 F.2d at 246.

As discussed thoroughly herein, the JOLs seek to violate and evade applicable jurisdictional requirements under FIRREA and the existing receivership process. *See* 18 U.S.C. § 1821(j). Federal law established the powers of the FDIC to act as receiver and protect the public interest, which is precisely what is occurring in the SVB Receivership and the Bridge Bank Receivership, and the JOLs should not be permitted to carve out, in some way, assets and liabilities associated with the Branch. The JOLs seek to disrupt and otherwise undermine this congressionally-mandated process by having the Court stay adjudication of the JOLs' Proof of Claim through the SVB Receivership and grant the JOLs' request to conduct discovery outside of the scope of the receivership process—a process to which the JOLs (and many other Cayman Creditors) have already submitted themselves. Accordingly, granting the relief requested in the Motion would be detrimental to the public interest.

## G.    The FDIC'S *Touhy* Regulations Would Apply to Any Chapter 15 Discovery

As this Court is aware, the FDIC has promulgated regulations, pursuant to the Supreme Court's opinion in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) governing litigation-related requests for FDIC-held material. Under those regulations, requesters must submit requests for disclosure of information or authorization of testimony to the FDIC's General Counsel, "specify[ing] the information sought with reasonable particularity and . . . showing in detail the relevance of such exempt information to the litigation, justifying good cause for disclosure, and a commitment to be bound by a protective order." 12 C.F.R. § 309.6(b)(8). The General Counsel is entitled to withhold documents for failure to make a proper request. *Id.* Absent such

- 43 -

authorization from the General Counsel, the FDIC may not provide the requested information or testimony.  12 C.F.R. § 309.7(c).

Failure to exhaust the FDIC's administrative process precludes granting any motion to compel. *See In re SVB Financial Group*, 23-10367-mg (Bankr. S.D.N.Y. Jul 5, 2023), ECF No. 415 at 28, ln. 19-21, attached hereto as **Ex. 1** (noting "[c]ompliance with the *Touhy* process to the extent applicable determines the extent of the FDIC-C's waiver of sovereign immunity"); *see also In re S.E.C. ex rel. Glotzer*, 374 F.3d 184, 190 (2d Cir. 2004); *In re Grabis*, No. 13-10669, 2018 WL 6132045, at *8 (Bankr. S.D.N.Y Nov. 20, 2018) (denying debtor's request for document production from the U.S. Department of Energy for failure to exhaust *Touhy* regulations); *Antonio v. United States*, No. 14 Civ. 2072, 2017 WL 3769307 (S.D.N.Y. Aug. 30, 2017) (exhaustion of *Touhy* regulations is a jurisdictional prerequisite).

Here, Movants' requests for Chapter 15 discovery should be denied outright for the reasons stated above.  However, if this Court grants the JOLs' motion, they must also make a *Touhy* request under 12 C.F.R. Part 309 for any exempt documents or information sought.

Further, the FDIC has claimed deliberative process privilege with respect to predecisional and deliberative materials concerning the invocation of the Systemic Risk Exception, SVB's failure and the establishment of a bridge bank, and the bidding process surrounding SVB's sale, as well as bank examination privilege with respect to certain exempt information. Any *Touhy* response would be limited by the agency's assertions of privilege. *See United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (upholding assertion of deliberative process privilege with respect to memoranda prepared by staff and sent to decisionmakers); *see also Nat. Res. Def. Council v. United States Env't Prot. Agency*, 19 F.4th 177, 192 (2d Cir. 2021) (clarifying Second Circuit law in light of Sierra Club; "a record is predecisional if it relates to a

specific decision or a specific decision making process and was generated before the conclusion of that decision or process") (emphasis omitted).

## **RESERVATION OF RIGHTS**

The submission of this Objection does not constitute (i) a submission by the FDIC-Corporate, FDIC-R1, or FDIC-R2 to the jurisdiction of the Bankruptcy Court for the resolution of any matter that is properly the subject of FDIC-R1's or FDIC-R2's administrative processes, (ii) an admission that this Court is the appropriate forum for disputes involving the FDIC-Corporate, FDIC-R1, or FDIC-R2, or (iii) a waiver by FDIC-Corporate, FDIC-R1, or FDIC-R2 of any of its rights or remedies, including without limitation, the provisions of FIRREA. Further, the submission of this Objection does not constitute a waiver of the Objectors' rights, defenses, and arguments to object to the Petition, which has not yet been set for briefing. All such rights are expressly reserved.

## **CONCLUSION**

By the Chapter 15 petition and the Motion, the JOLs seeks to circumvent and nullify the FIRREA claims process—even though the JOLs have intentionally invoked and submitted their Claims to that process. For the reasons discussed above, the Court should deny the Motion and provide the FDIC-Corporate, FDIC-R1, and FDIC-R2 all other relief as is appropriate under law and equity.

Dated: January 26, 2024
New York, New York

DENTONS US LLP

*/s/ Lynn P. Harrison, III*
Lynn P. Harrison, III, Esq.
Stephen S. Kudenholdt, Esq.
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: 212 768-6700
Facsimile: 212 768-6800
E-mail: lynn.harrisoniii@dentons.com
E-mail: stephen.kudenholdt@dentons.com

-and-

DENTONS US LLP
Sam J. Alberts (*pro hac vice* forthcoming)
1900 K Street, NW
Washington DC 20006
Telephone: 202 496-7500
Facsimile: 202 496-7756
E-mail: sam.alberts@dentons.com

*Counsel to the Federal Deposit Insurance Corporation, in its corporate capacity and in its capacity as Receiver for Silicon Valley Bank, Santa Clara, and as Receiver for Silicon Valley Bridge Bank, N.A.*

*Of Counsel:*

Jeffrey Schmitt, Senior Counsel
Nicholas Katsonis, Counsel
Andrew J. Dober, Senior Counsel
Erik Bond, Counsel
Federal Deposit Insurance Corporation
Legal Division
3501 Fairfax Drive
Arlington, VA 22226
Tel.: 703 562 2089
jschmitt@fdic.gov
nkatsonis@fdic.gov
adober@fdic.gov
erbond@fdic.gov

Laura Fontaine, Senior Attorney
Federal Deposit Insurance Corporation
Dallas Regional Office
600 North Pearl Street, Suite 700
Dallas, TX 75201
Tel: 972 761 8227
lfontaine@fdic.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of January, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CMF/ECF. I also certify that the foregoing document is being served this day via transmission of Notice of Electronic Filing generated by CM/ECF on all parties of record.

*/s/ Lynn P. Harrison, III*
Lynn P. Harrison, III