**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re: | Chapter 15 |
| SILICON VALLEY BANK (CAYMAN ISLANDS BRANCH) (in Official Liquidation) | Case No. 24-10076 (MG) |
| Debtor in a Foreign Proceeding.[1] | |

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF VERIFIED PETITION FOR RECOGNITION OF FOREIGN
INSOLVENCY PROCEEDING PURSUANT TO SECTIONS 1504,
1509, 1515, 1517, 1520 AND 1521 OF THE BANKRUPTCY CODE**

Warren E. Gluck, Esq.
John J. Monaghan, Esq. (*pro hac vice* forthcoming)
Paul M. Aguggia, Esq. (*pro hac vice* forthcoming)
Marie E. Larsen, Esq.
HOLLAND & KNIGHT LLP
31 W. 52nd Street
New York, NY 10019
Telephone: 212-513-3200
Fax: 212-385-9010
Warren.Gluck@hklaw.com
John.Monaghan@hklaw.com
Paul.Aguggia@hklaw.com
Marie.Larsen@hklaw.com

*Counsel for the Joint Official Liquidators
of Silicon Valley Bank (Cayman Islands Branch)
(in Official Liquidation)*

---

[1] Silicon Valley Bank is registered under Part IX of the Cayman Islands Companies Act, with registration number 193670.

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

REPLY ............................................................................................................................................1

    I.    This Court Has Subject Matter Jurisdiction Over the Chapter 15 Petition ..............1

    II.    The FDIC Receivers' Consented to the Cayman Proceeding and Cayman Law ...................................................................................................................3

    III.    SVB Cayman Qualifies as a Chapter 15 Debtor ........................................................4

    IV.    SVB Cayman's Cayman COMI and the FDIC's Dead-Wrong "One Week" Argument ...................................................................................................7

    V.    The Court May Confer Standing Upon the JOLs to Sue or Be Sued in the United States as Representatives of the SVB Cayman Estate .................................9

    VI.    Granting Chapter 15 Recognition Is Consistent With U.S. Public Policy .............10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
  511 U.S. 863 (1994) ............................................................................................................. 6

*Drawbridge Special Opportunities Master Fund LP v. Barnet (In re Barnet)*,
  737 F.3d 238 (2d Cir. 2013) ........................................................................................ 4, 5, 6

*Duncan v. Walker*,
  533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) .................................................... 6

*Frazer v. United States*,
  288 F.3d 1347 (Fed. Cir. 2002) ......................................................................................... 4

*Greene v. United States*,
  79 F.3d 1348 (2d Cir. 1996) .............................................................................................. 6

*In re Henry–Luqueer Properties, Inc.*,
  145 B.R. 771 (Bankr. E.D.N.Y. 1992) ............................................................................... 9

*O'Melveny & Meyers v. FDIC*,
  512 U.S. 79 (1994) ............................................................................................................ 4

*In re Parmalat Securities Litigation*,
  377 F. Supp. 2d 390 (S.D.N.Y. 2005) ............................................................................... 9

*In re The Irish Bank Resolution Corp. Ltd*,
  538 B.R. 692 (D. Del. 2015) .............................................................................................. 4

*United States v. Kozeny*,
  541 F.3d 166 (2d Cir. 2008) .............................................................................................. 6

**Statutes**

11 U.S.C. 1502(1) ..................................................................................................................... 5

11 U.S.C. § 363(d) .................................................................................................................... 5

11 U.S.C. § 541(a) .................................................................................................................... 5

11 U.S.C. § 1502(2) .................................................................................................................. 8

12 U.S.C. § 1821 ....................................................................................................................... 2

12 U.S.C. § 3102(j) ................................................................................................................... 4

28 U.S.C. § 1821(j) ........................................................................................................................ 2

Bankruptcy Code Section 1504 ..................................................................................................... 1

Bankruptcy Code Section 1509 ..................................................................................................... 1

Bankruptcy Code Section 1515 ..................................................................................................... 1

Bankruptcy Code Section 1517 ..................................................................................................... 1

Bankruptcy Code Section 1520 ..................................................................................................... 1

Bankruptcy Code Section 1521 ..................................................................................................... 1

Code § 323(b) ............................................................................................................................... 9

N.Y. BANKING LAW § 606(4) ..................................................................................................... 4

**Other Authorities**

H.R. REP. NO. 109-31 (2005) ........................................................................................................ 5

Section 109(a) ..................................................................................................................... 4, 5, 6

Section 109(b) .............................................................................................................................. 4

Section 1502 ................................................................................................................................. 6

Section 1502(1) ........................................................................................................................ 5, 6

Section 1509(b) ............................................................................................................................ 9

Section 1521(a)(7) ........................................................................................................................ 9

Andrew Childe, Niall Ledwidge and Michael Pearson, in their capacities as the duly appointed joint official liquidators of Silicon Valley Bank (Cayman Islands Branch) (in Official Liquidation), respectfully submit this Reply Memorandum of Law in further support of their Verified Petition for Recognition of a Foreign Insolvency Proceeding Pursuant to Sections 1504, 1509,1515, 1517, 1520 and 1521 of the Bankruptcy Code (ECF No. 1) (the "**Petition**").[1] In further support of their Petition, the JOLs respectfully state:

## PRELIMINARY STATEMENT

The FDIC's[2] Objection (ECF No. 30) (the "**Objection**") does not provide a basis for this Court not to grant the mandatory recognition of a qualifying foreign proceeding set forth in chapter 15 of the Bankruptcy Code. Rather, the FDIC conflates recognition with the claims process and misapprehends the goals of recognition here, which are not to *undermine* the authority of the FDIC as receiver of SVB and the Bridge Bank under FIRREA, but in order to *facilitate* participation in that very claims process on behalf of SVB Cayman and its creditors and coordination between two live insolvency proceedings. The FDIC's misplaced standing objection in this proceeding is not relevant to the merits of the instant application, and in fact demonstrates why recognition of the JOLs as Foreign Representatives is required. Because the Cayman Proceeding meets the requirements of recognition as a foreign main proceeding, SVB Cayman respectfully requests that the relief requested in the Petition be granted.

## REPLY

**I.    This Court Has Subject Matter Jurisdiction Over the Chapter 15 Petition**

The FDIC has incorrectly argued that this Court lacks subject matter jurisdiction over this

---

[1] This Reply is supported by the February 12, 2024 Declaration of Niall Ledwidge ("**Ledwidge Decl.**"), the February 12, 2024 Supplemental Declaration of Niall Ledwidge ("**Supp. Ledwidge Decl.**") and the February 12, 2024 Declaration of Dr. Riz Mokal ("**Mokal Decl.**").

[2] All capitalized terms not defined herein shall have the meaning prescribed to them in the Petition (ECF No. 1).

recognition action, on the basis of its objections to the Grand Court's Winding Up Order and the Grand Court's exercise of jurisdiction over the SVB Cayman estate, as purportedly infringing on the SVB Receivership's authority over SVB Cayman's assets as a branch of SVB.[3] Objection at pp. 5-8. The basis of FDIC's argument is that neither this court nor the Cayman Court may exercise judicial oversight of the receivership or the claims process. But that is not the import of the Winding Up Order, nor what is requested by SVB Cayman or the JOLs here. Recognition of the Cayman Proceeding and the JOLs' appointment to "take action to establish the status of the Cayman depositors" (Ledwidge Decl. Ex. 15 at ¶ 57)[4] in no way undermines the FIRREA claims process set out in 12 U.S.C. § 1821. Indeed, SVB Cayman has submitted itself to that process through its submission of a claim to the FDIC, and the JOLs have expressed their intent to file a complaint for *de novo* review in the appropriate District Court by the 60 day deadline.

Similarly, 28 U.S.C. § 1821(j) does not strip this Court of subject matter jurisdiction to grant chapter 15 recognition of a foreign bankruptcy, and specifically the Cayman Proceeding. Contrary to the FDIC argument, there is nothing about recognition of a parallel insolvency proceeding that in any way inhibits the rights of the FDIC to perform its duties. The FDIC's argument that the Cayman Proceeding is a threat to the FDIC's authority is in fact directly controverted by the parallel insolvency proceeding pending in Canada in relation to the Canadian SVB branch, which has received the FDIC's substantial and full cooperation throughout. *See* Supp. Ledwidge Decl. Exs. 4-6 and upcoming trial testimony. The Receivers' treatment of the Canadian

---

[3] FDIC argues that the Winding Up Order appointed the JOLs as liquidators over SVB. This is a fundamental misunderstanding of the Winding Up Order. Whereas an "estate" was created upon the collapse of SVB in March 2023, and further a "trust" upon appointment of the JOLs in June 2023, the JOLs are liquidators over the Cayman estate and trust which comprises claims of the Cayman creditors and the foreign branch assets reflected in the Domestic Deposit Account.

[4] The July 2023 Opinion also provides for the JOLs to conduct an investigation "in respect of the apparent removal of any monies and assets of the Branch out of this jurisdiction" (Ledwidge Ex. 15 at ¶ 63), activities which also do not infringe upon the FDIC's claims process.

2

#241753523_v1

branch as having separate assets, juridical personality and rights is simply incompatible with the premises underlying the FDIC's FIRREA objections here.

Neither are the JOLs in an inconsistent position in their role as liquidators of SVB Cayman – their job is to investigate and advance the interests of the Estate and Trust (with respect to the SVB Cayman Domestic Account) and its creditors by determining their status as insured claimants in the United States, including by challenging the disallowance of claim in respect of the Cayman branch accounts at SVB. These tasks are not at odds, as the FDIC argues, with conducting a claims process for the depositors in Cayman. Notably, SVB Cayman has not made its claims on behalf of a class, and the FDIC's cited authority is inapplicable here. Rather, the JOLs simply seek Chapter 15 recognition of a parallel foreign insolvency proceeding, with the attendant rights that result from recognition.[5] Those rights include the powers of a trustee to bring claims as the exclusive agent of the Cayman depositors,[6] as well as directly in connection with the SVB Cayman Domestic Account and the corpus of the Estate at issue in the Cayman proceeding. In sum, the FDIC can point to no authority that divests this Court of its authority under the Bankruptcy Code.

## II.   **The FDIC Receivers' Consented to the Cayman Proceeding and Cayman Law**

At the outset, it must be noted that the FDIC provides no response to the fact that Silicon Valley Bank, through its registration as a foreign company in Cayman and the granting of a Cayman banking license, consented to Cayman jurisdiction, including but not limited to the very

---

[5] The FDIC's myopic view of Chapter 15 is notable. Chapter 15 recognition would permit the JOLs to exercise various powers, only some of which would require further Court approval and many of which would not involve the FDIC at all. These powers include, *inter alia*, the right to seek discovery from non-FDIC parties and the rights to bring litigation against non-FDIC parties. The FDIC is trying to reduce the issue of Chapter 15 Recognition to a two-party dispute, which will be appropriate upon *de novo* review of SVB Cayman's claim, but not here.

[6] The filing of claims individually by Cayman depositors against the FDIC does not negate the Cayman Court's appointment of the JOLs as the exclusive agent for such depositors and their role over liquidation of the SVB Cayman estate and trust. As set forth in the Supp. Ledwidge Decl. and expected trial testimony, there has been substantial Cayman creditor participation in the Cayman Proceeding, with filed claims totaling approximately $300 million in the aggregate.

Cayman winding up procedures at issue. (Mokal Decl. ¶ 21)  The FDIC as receiver stands in the shoes of SVB. *O'Melveny & Meyers v. FDIC*, 512 U.S. 79, 86 (1994); *Frazer v. United States*, 288 F.3d 1347, 1354 (Fed. Cir. 2002) ("the FDIC is not the government").  At least in its capacity as receiver, the FDIC is estopped from objecting to the ability of SVB Cayman to wind up its affairs under applicable Cayman law and is bound by SVB's consent.

### III.    SVB Cayman Qualifies as a Chapter 15 Debtor

The FDIC argues that SVB Cayman does not qualify as a chapter 15 debtor because "the Branch is not a person." Objection at p. 8.[7]  But the FDIC misstates the foreign debtor seeking chapter 15 recognition: a Cayman estate and trust. It is well-settled Cayman law that immediately upon the SVB Collapse, an estate was created, and by virtue of the Winding Up Order, the JOLs are presiding over a statutory trust. (Mokal Decl. ¶¶ 23-56). This estate and trust, under the administration of the JOLs, is vested with both property and litigation rights and may bring claims and assert rights on behalf of its creditor constituency. *Id*.[8]

The FDIC's reliance on the decision in *Drawbridge Special Opportunities Master Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238 (2d Cir. 2013) is misplaced. In *Barnet*, the Second Circuit held that, pursuant to Section 109(a) of the Bankruptcy Code, a foreign debtor must reside

---

[7] The FDIC puts forth a rote argument that SVB and its Cayman branch were not separate entities, without addressing the fact that insolvency law in this country and internationally regularly treats a Bank and its branch as separate entities for purposes of liquidating an estate comprising of the branch's customers. For example, U.S. branches of foreign banks are subject to liquidation by state regulators, including liquidation of assets in the name of the foreign bank within the territorial jurisdiction of the state, for the benefit of depositors located within the state. *See, e.g.*, N.Y. BANKING LAW § 606(4) (permitting New York regulators to seize all New York-based assets of the foreign bank and liquidate the assets for the benefit of New York creditors). Further, the International Banking Act of 1978 permits federal regulators to take similar actions in connection federally-charted U.S. branches of foreign banks, and expressly limits claims in the liquidation to those that would exist upon a finding that the foreign bank and U.S. branch were separate entities. *See* 12 U.S.C. § 3102(j).

[8] Even if the foreign debtor was a "branch" rather than an estate or trust, Section 109(b) would not require disqualification.  As the FDIC admits, upon the SVB Collapse, Silicon Valley Bank ceased to exist, and whether or not a formerly operating bank is disqualified under Section 109(b) is to be determined at the time of recognition.  *In re The Irish Bank Resolution Corp. Ltd,* 538 B.R. 692, 697 (D. Del. 2015) is directly on point, and there is no basis to exclude SVB Cayman as a chapter 15 debtor under Section 109(b).

4

or have a domicile, a place of business, or property in the United States to qualify as a chapter 15 debtor. *In re Barnet*, 737 F.3d at 247.  The *Barnet* decision in no way addressed the question at hand here, where there is a *more controlling and specific statute* that expressly states who may qualify as a debtor – *ejusdim generis*. The apparent conflict between Sections 109(a) and 1502(1) was not lost on Congress, in fact it was by design.  Congress <u>*purposefully amended*</u> the provisions of the UNCITRAL Model Law when enacting Chapter 15, to permit foreign debtors to comprise more than "persons" under Section 109(a), and so there could be no confusion that the "person" requirement of Section 109(a) applies to chapter 15 cases to the exclusion of Chapter 1. The legislative history in connection with enactment of 11 U.S.C. 1502(1) provides:

> "Debtor" is given a special definition for this chapter.  This definition does not come from the Model Law, but is necessary to eliminate the need to refer repeatedly to "the same debtor as in the foreign proceeding." With certain exceptions, the term "person" used in the Model Law has been replaced with "entity," which is defined broadly in section 101(15) to include natural persons and various legal entities, thus matching the intended breadth of the term "person" in the Model Law. The exceptions include contexts in which a natural person is intended and those in which the Model Law language already refers to both persons and entities other than persons.

*See* H.R. REP. NO. 109-31, at 107 (2005).[9]

Rules of statutory construction mandate that meaning be given to Congress' deliberate choice to define a debtor under chapter 15 as an "entity" rather than a "person." In *Barnet*, by contrast, there was no more specific definition or instruction regarding the requirement of "property" to be in the United States for debtor eligibility, such that the Second Circuit ultimately concluded it had no choice but to make the same a requirement.  "Statutory construction must

---

[9] Various other provisions of the Bankruptcy Code also contemplate the existence of an estate upon bankruptcy filing, or a non-business trust acting as a debtor in a U.S. bankruptcy.  *See* 11 U.S.C. § 363(d) (stating that the trustee may "use, sell, or lease property … in the case of a debtor that is a corporation or trust that is not a moneyed business, only in accordance with nonbankruptcy law …"); 11 U.S.C. § 541(a) (creating an estate comprised of all legal or equitable interest in property wherever located)

5

#241753523_v1

begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008). Statutes should be interpreted so as "to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). To the extent possible, **statutes should be harmonized** and not read as creating a conflict. *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 879 (1994). If there is a conflict between two statutory provisions — one of them a general statement and the other a specific statement — the court will apply the more specific statement as an exception to the general statement – *ejusdem generis*. *Greene v. United States*, 79 F.3d 1348, 1355 (2d Cir. 1996).

Here, the rules of statutory construction must give effect to Congress' deliberate use of the word "entity" to define who may qualify as a chapter 15 debtor under Section 1502(1) (a specific provision which only pertains to chapter 15 bankruptcy), as compared to the generalized debtor qualifications set forth in Section 109(a) which pertain to all U.S. bankruptcies.

In short, it is easy to square the statutory definition of "entity" with the *Barnet* decision. If you have a person, and not an estate or a trust, that person has to have a domicile, place of business or assets in the United States. But an estate or a trust can meet the Bankruptcy Code's requirements without meeting those additional requirements. Indeed the *Barnet* decision itself appears to support this conclusion:

> "Section 109(a) does not say that the term 'debtor' means anything. Rather, it adds a requirement for the kinds of 'person' that 'may be a debtor under this title.' Section 1502, like Section 101, introduces its definition with the phrase 'the term—(1) debtor means.' This linguistic parallelism makes clear that Section 1502 supplants Section 101—i.e., it supplants the definition of debtor with the context of Chapter 15—but does not supplant the requirements for 'a debtor under this title' not included in the definition."

*In re Barnet*, 737 F.3d 238 at 249. Accordingly, SVB Cayman, as an estate and trust created under Cayman law, qualifies as a Chapter 15 debtor.

6

**IV.     SVB Cayman's Cayman COMI and the FDIC's Dead-Wrong "One Week" Argument**

Contrary to the FDIC's arguments, the COMI of SVB Cayman is indisputably located in the Cayman Islands prior to and at the time of the Chapter 15 filing. The FDIC arguments completely ignore that SVB Cayman had substantial Cayman-related connections and economic activity at all relevant times. *See* Ledwidge Decl. Ex. 15 at ¶ 56 (Cayman Court noting that SVB Cayman had an active branch here and entered into contracts governed by Cayman law and [] took Cayman deposits. It is regulated by the Cayman Islands Monetary Authority..."). Prior to collapse, SVB Cayman accepted hundreds of millions of dollars of deposits from customers who would later become creditors, who looked to the Cayman Islands as the home of SVB Cayman. Each Cayman Eurodollar Agreement expressly provided that the accounts were payable and collectible only at the SVB Cayman Islands branch, and that the accounts were under the exclusive jurisdiction of the Grand Court and governed by Cayman law. Ledwidge Decl. Exs. 5-7.[10] Additionally, SVB Cayman operated under a Class B license granted by CIMA, was under the regulation and control of CIMA and subject to SVB's registration in the Cayman Islands and assent to the Cayman Companies Act.

FDIC attempts to diminish the extensive nature of the Cayman-located activities of the JOLs on behalf of SVB Cayman as being conducted for a single week (Objection at pp. 15-16) – is a surprising choice given the assertion is easily disprovable and in fact dead-wrong. The acts taken by the JOLs on behalf of SVB Cayman since June 2023 have been routine, regular, and on a large scale - more than sufficient to support the Cayman COMI of SVB Cayman. The JOLs have

---

[10] The FDIC's reliance on the California jurisdictional clause of the Disclosure Statement received by Cayman customers (Objection at p. 15 n. 9) is unavailing. The terms of the Eurodollar Agreements expressly state that "the obligations related to the [Eurodollar Accounts] will be… ***under the exclusive jurisdiction of the courts of the Cayman Islands***" and "if there are any conflicts with the [Disclosure Agreement], the ***terms of this [Eurodollar Agreement] will control***." (Ledwidge Decl. Exs. 5-7 (emphasis added)).

7

expended nearly 350 hours aimed at administration of the Cayman Proceeding, including meeting all statutory notice requirements, performing investigative tasks, cooperating with CIMA, holding meetings with creditors, evaluation of claims, strategy and the scope of assets and have otherwise directed many hundreds of hours of strategy, legal and government relations work on a near-daily basis since their appointment. (Supp. Ledwidge Decl. ¶¶ 3-34). The accusation of the FDIC, that such actions undertaken by the JOLs consistent with their duties to the SVB Cayman creditors and the Cayman Court, are somehow evidence of an intent to manipulate the COMI of SVB Cayman in bad faith, can and should be rejected outright.

In addition to the foregoing Cayman activities of the estate/trust prior to and at the time of the chapter 15 application, the acts of the Cayman creditor-depositors confirm that SVB Cayman's COMI was identifiable by third parties. Not only did the three named creditors representing $37,960,842.53 of claims seek winding up of SVB Cayman within Cayman Islands, but following entry of the Winding Up Order, the JOLs received claims from 295 Cayman creditors totaling $284,457,173.26, most of whom voted for the representative liquidation committee that considers and approved JOL actions, all under circumstance where there is no bar date for claims rendering the current participation relatively advanced for a Cayman liquidation. *Id.* at ¶¶ 23.[11] A Liquidation Committee was formally constituted on October 31, 2023 consisting of SVB Cayman creditors, and this Committee has provided feedback on recommended courses of action by the JOLs. Based on the foregoing activities at the time of the chapter 15 petition, as well as prior to the JOLs' appointment, it is clear that the SVB Cayman estate's COMI is the Cayman Islands.[12]

---

[11] The substantial and ongoing participation from the Cayman creditors is evidence of the collective nature of the Cayman Proceeding. The JOLs do not represent a subset of the SVB creditor group, as alleged by the FDIC, but all of the creditors of the defined SVB Cayman estate, whose claims are heard and considered on an equal basis.

[12] All of the foregoing activities at the very least, and in the alternative, demonstrate non-transitory economic activity located in the Cayman Islands sufficient for an "establishment" to qualify for foreign non-main proceeding status under 11 U.S.C. § 1502(2).

8

V. **The Court May Confer Standing Upon the JOLs to Sue or Be Sued in the United States as Representatives of the SVB Cayman Estate**

The FDIC argues that this Court is powerless to confer standing upon the JOLs to bring claims on behalf of the SVB Cayman estate, including but not limited to the incorrectly described "collective" claims of SVB Cayman's creditors (the claims are not collective but individualized and the JOLs agency-like authority is judicially ordered). But the FDIC's arguments are contradicted by the Bankruptcy Code and case law.

This Court correctly referenced Sections 1521(a)(7) and 1509(b) as the applicable Code sections to confer standing to foreign representatives to sue and be sued on behalf of a foreign bankruptcy estate, similar to a trustee under any other chapter of the Bankruptcy Code. A Trustee, as representative of the estate, has the exclusive capacity to sue and be sued on behalf of the estate. *See* Code § 323(b); *In re Henry–Luqueer Properties, Inc.,* 145 B.R. 771, 774 (Bankr. E.D.N.Y. 1992) (holding that under Section § 323(b) a trustee is empowered to commence an adversary proceeding on behalf of the estate). Bankruptcy trustees have standing to pursue the claims of the bankruptcy estate, including direct claims of the debtor and claims belonging to the collective group of creditors. *In re Parmalat Securities Litigation,* 377 F. Supp. 2d 390, 420 (S.D.N.Y. 2005).

Here, the JOLs are asking for recognition of standing that is routinely granted upon chapter 15 recognition (and is in fact automatic under Section 1509(b)), to sue and be sued on behalf of the foreign estate in the United States. The FDIC's argument that the question of standing is for another Court to decide is directly contradicted by the fundamental purpose of Chapter 15 and the Bankruptcy Code. In particular, Section 1509(b) reflects lawmakers' intention that chapter 15 be the "exclusive door to ancillary assistance to foreign [insolvency] proceedings," with the goal of controlling such cases in a single court. Collier at ¶ 1509.03 (quoting H.R. Rep. No. 109-31(I), 110 (2005) ("Parties would be free to avoid the requirements of [chapter 15] and the expert scrutiny

9

of the bankruptcy court by applying directly to a state or Federal court unfamiliar with the statutory requirements…. This section concentrates the recognition and deference process in one United States court, ensures against abuse, and empowers a court that will be fully informed of the current status of all foreign proceedings involving the debtor."). The FDIC's attempt to divest this Court of jurisdiction to decide matters that are fundamental to the chapter 15 process – such as the right of foreign representatives to represent the foreign debtor estate in the United States – should not be granted.

## VI. Granting Chapter 15 Recognition Is Consistent With U.S. Public Policy

The FDIC argues that chapter 15 recognition would be manifestly contrary to the public policy of the United States as it would be in violation of U.S. law, and specifically, FIRREA. Objection at pp. 22-23. The FDIC goes on to argue against perceived relief that, in reality, the JOLs are not seeking, such as circumvention of the FIRREA claims process and the sixty (60) day deadline to file claims.

To be clear, the JOLs fully intend to file claims against the FDIC and submit itself to the jurisdiction of the appropriate non-bankruptcy court to adjudicate the FDIC's denial of their Provisional Proof of Claim. There is absolutely nothing about the Cayman Court's jurisdiction to wind up the affairs of a branch located within the Cayman Islands (jurisdiction to which Cayman depositors, Silicon Valley Bank and FDIC-R as successor-in-interest consented), which is in violation of U.S. law. In fact, as set forth above, state and federal law within the United States permit similar liquidation of U.S. branches for foreign banks. In sum, there is no conflict whatsoever between U.S. and Cayman law in this regard, and the Cayman Proceeding is entirely consistent with U.S. policy.[13]

---

[13] The FDIC's stated position is curious, given that it has not only consented to the Canadian winding up of Silicon Valley Bank's Canadian branch, but has actively participated and cooperated with the Canadian liquidators at every

10

WHEREFORE, the Joint Official Liquidators respectfully request that this Court enter the Proposed Order for Recognition, substantially in the form attached to the Petition, granting the relief requested therein and such other and further relief as this Court may deem just and proper.

Dated: February 12, 2024
      New York, New York          HOLLAND & KNIGHT LLP

   /s/ Warren E. Gluck
Warren E. Gluck, Esq.
John J. Monaghan, Esq. (*pro hac vice* forthcoming)
Paul M. Aguggia, Esq. (*pro hac vice* forthcoming)
Marie E. Larsen, Esq.
HOLLAND & KNIGHT LLP
31 W. 52nd Street
New York, NY 10019
Telephone: 212-513-3200
Fax: 212-385-9010
Warren.Gluck@hklaw.com
John.Monaghan@hklaw.com
Paul.Aguggia@hklaw.com
Marie.Larsen@hklaw.com

*Counsel for the Joint Official Liquidators
of Silicon Valley Bank (Cayman Islands Branch)
(in Official Liquidation)*

---

step of the Canadian liquidation. The Canadian liquidation was initiated by the Canadian government upon the SVB Collapse, under banking regulations similar to the BTC Act in Cayman. PwC was appointed as liquidator with exclusive authority to liquidate assets of the Canadian branch of SVB, and the FDIC has assisted PwC at every step with its liquidation and sale efforts. (Supp. Ledwidge Decl. ¶¶ 35-53). The FDIC provides no explanation – because there is none – for why the Canadian liquidation is being supported by the FDIC but the Cayman Proceeding is in violation of United States law.

# CERTIFICATE OF SERVICE

      I certify that, on February 12, 2024, I caused a copy of the foregoing to be filed through the Court's CM/ECF system, which caused the foregoing to be served electronically on all counsel that have appeared and consented to electronic service.

/s/ Warren E. Gluck